## MERCANTILE BANK *v.* NEW YORK.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Argued March 11, 12, 1887. — Decided April 4, 1887.

The main purpose of Congress in fixing limits to state taxation on investments in shares of national banks was, to render it impossible for the state, in levying such a tax, to create and foster an unequal and unfriendly competition, by favoring institutions or individuals carrying on a similar business, and operations and investments of like character.

The term "moneyed capital," as used in Rev. Stat. § 5219, respecting state taxation of shares in national banks, embraces capital employed in national banks, and capital employed by individuals when the object of their business is the making of profit by the use of their moneyed capital as money — as in banking as that business is defined in the opinion of the court; but it does not include moneyed capital in the hands of a corporation, even if its business be such as to make its shares moneyed capital when in the hands of individuals, or if it invests its capital in securities payable in money.

The mode of taxation adopted by the State of New York in reference to its corporations, excluding trust companies and savings banks, does not operate in such a way as to make the tax assessed upon shares of national banks at a greater rate than that imposed upon other moneyed capital in the hands of individual citizens.

Although trust companies created under the laws of New York are not banks in the commercial sense of the word, shares in such companies are moneyed capital in the hands of individuals: but as these companies are taxed upon the value of their capital stock, with deductions on account of property in which it is invested either otherwise taxed or not taxable, and are additionally taxed upon their income by way of

franchise tax, it does not appear that the rate of taxation thus imposed by the laws of New York is less than that upon shares in national banks.

Deposits in savings banks are exempted from state taxation for just reasons, and, as the exemption does not operate as an unfriendly discrimination against investments in national bank shares, it cannot affect the rule for the taxation of the latter.

The amount of bonds of the city of New York which are exempt from taxation under state laws is too small, as compared with the whole amount of personal property and credits which are the subject of taxation, to affect, under Rev. Stat. § 5219, the validity of an assessment.

The bonds of municipal corporations are not within the reason of the rule established by Congress for the taxation of national banks.

THE bill in this case was filed by the appellant, an association organized as a national bank, in the city of New York, the object and prayer of which were to restrain the collection of taxes assessed upon its stockholders in respect to their shares therein, on the ground that the taxes assessed and sought to be collected by the defendants were illegal and void under § 5219 of the Revised Statutes of the United States, as being at a greater rate than those assessed under the laws of New York upon other moneyed capital in the hands of the individual citizens of that state. The assessment in question was made for the year 1885, by the proper officer, acting in pursuance of § 312 of an act of the legislature of the State of New York, passed July 1, 1882, entitled "An act to revise the statutes of this state relating to banks, banking and trust companies," which reads as follows :

"SEC. 312. The stockholders in every bank or banking association organized under the authority of this State, or of the United States, shall be assessed and taxed on the value of their shares of stock therein ; said shares shall be included in the valuation of the personal property of such stockholders in the assessment of taxes at the place, city, town or ward where such bank or banking association is located, and not elsewhere, whether the said stockholders reside in said place, city, town or ward or not ; but in the assessment of said shares, each stockholder shall be allowed all the deductions and exceptions allowed by law in assessing the value of other taxable personal property owned by individual citizens of this State, and the

assessment and taxation shall not be at a greater rate than is made or assessed upon other moneyed capital in the hands of individual citizens of this State. In making such assessment there shall also be deducted from the value of such shares such sum as is in the same proportion to such value as is the assessed value of the real estate of the bank or banking association, and in which any portion of their capital is invested, in which said shares are held, to the whole amount of the capital stock of said bank or banking association. Nothing herein contained shall be held or construed to exempt the real estate of banks or banking associations from either State, county or municipal taxes, but the same shall be subject to State, county, municipal and other taxation to the same extent and rate, and in the same manner according to its value, as other real estate is taxed. The local authorities charged by law with the assessment of the said shares shall, within ten days after they have completed such assessment, give written notice to each bank or banking association of such assessment of the shares of its respective shareholders, and no personal or other notice to such shareholders of such assessment shall be necessary for the purpose of this act."

The hearing in the Circuit Court was had upon an agreed statement of facts, as follows:

"It is hereby stipulated and agreed by and between the parties to the above entitled suit, that, for the purpose of the trial of this cause, the facts hereinafter stated are true, and that the cause be submitted for trial and decree upon such statement alone, together with the pleadings:

"1. That the complainant, on the second Monday of January, A.D. 1885, and for several months prior thereto, had a capital stock of the par value of $1,000,000 and a surplus fund of $200,000; that nearly the whole of said capital and surplus fund was, during that period, invested in bonds of the United States of the par value of $949,000, and of a market value and cost largely exceeding that sum; that its shares of stock were each of the par value of $100 and of the number of 10,000, and were then held by 142 persons and corporations; 50 of whom, owning 1877 shares, were residents of states

other than the State of New York, and the remainder residents of the State of New York.

"2. That, on the second Monday of January, 1885, the proper tax officers of the city of New York, acting under c. 409 of the laws of 1882 of the State of New York, did value and assess for taxation the shares of stock of said bank against the individual shareholders thereof, at the rate of $89 per share, after deducting the proportion of the assessed value of the real estate of said bank applicable to each share of stock, as by law required, making the total gross valuation of said shares in the hands of the shareholders the sum of $890,000, from which sum the debts of sundry indebted stockholders, amounting to $89,128, were deducted, as by law allowed, leaving the total valuation of said shares against said stockholders upon which taxes were thereafter assessed the sum of $800,872.

"3. That, on the second Monday of January, 1885, the aggregate actual value of the shares of stock of the incorporated moneyed and stock corporations incorporated by the laws of the State of New York deriving an income or profit from their capital or otherwise (not including life insurance companies, trust companies, banks, or banking associations, organized under the authority of this state or of the United States) amounted to the sum of $755,018,892; that 'Exhibit A,' hereto appended and made a part of this agreement, contains a list of the corporations whose shares of capital stock are embraced in said sum of $755,018,892, and also shows the total par value of the shares of capital stock of each of said corporations.

"4. That, at the period aforesaid, the aggregate actual value of the shares of stock of the life insurance companies incorporated under the laws of this state amounted to the sum of $3,540,000, and at the same period the aggregate value of the personal property of said companies, consisting of mortgages, loans with collateral security, state, county, and municipal bonds, and railroad bonds and shares of stock of corporations (but not including the bonds of the United States nor the shares of corporations created by the State of New York),

amounted to $195,257,305; all of which is shown in detail in the schedule hereto annexed, marked 'Exhibit B.'

"5. That, at the said period, the aggregate actual value of the shares of the capital stock of the trust companies existing in the State of New York and organized under its laws amounted to $32,018,900, as is shown in detail in the schedule hereto annexed, marked 'Exhibit C,' of which sum the amount of $30,215,900 was of trust companies located in the city of New York.

"6. That, at the same period, the aggregate actual value of the deposits due by the savings banks of this state to depositors was $437,107,501 (not including the surplus accumulated by the said corporations, amounting to $68,669,001).

"7. That the aggregate actual value of the bonds and stocks issued by the city of New York, subject to the provisions of c. 552 of the laws of 1880, at the said period, amounted to $13,467,000.

"8. That the aggregate actual value at the same period of the shares of stock of corporations created by states other than the State of New York, owned by the citizens of the State of New York, amounted to at least the sum of $250,000,000.

"9. The assessed valuation of all personal property, after making the deductions allowed by law, in the city of New York (at the said period), as shown by the annual record of the assessed valuation of real and personal estate of the said city for the year 1885, was $202,673,806. This sum included the capital of corporations, (after making deductions for investments thereof in real estate, shares of New York corporations, taxable upon their capital stock under the laws of this state, and non-taxable securities,) as follows:

| | |
|---|---|
| Insurance companies | $2,146,379 |
| Trust companies | 156,506 |
| Miscellaneous companies | 29,234,409 |
| Railroad companies | 12,339,871 |

"It also included:

| | |
|---|---|
| Shares of national banks | 45,046,074 |
| Shares of state banks | 15,700,220 |

"The sum so deducted for the value of the real estate belonging to said trust companies located in the city of New York did not exceed $2,336,572.31.

The assessed value of the real estate in said

| | |
|---|---|
| city for said period is . . . . . . . . | $1,168,443,137 |
| And in the said state, including the city of New York, is . . . . . . . . . . . | 2,761,973,845 |
| The latter sum including the sum of about . | 340,000,000 |

being the assessed value of the real estate located in said state belonging to corporations.

"The 'aggregate amount of the taxable personal estate' within the State of New York, exclusive of said city, after deducting debts due by the owners thereof for the year ending December 31, 1884, as assessed by the assessors and returned to the state comptroller, is $151,632,369.

"This sum included the capital of corporations, (after making the deductions for investments thereof in real estate, shares of New York corporations taxable upon their capital stock under the laws of this state, and non-taxable securities,) of the amount of $34,466,612.

| | |
|---|---|
| The aggregate capital stock, taken at par, of the national banks outside of the city of New York, but within the State of New York, on December 20, 1884, as shown by the report of the Comptroller of the Currency of the United States, was . . . . . . . . . . . . . | $36,804,160 |
| And that of state banks, outside of the said city, but within said state, as shown by the report of the bank superintendent of New York, is . | 8,128,000 |
| Total (outside of New York City) . . | $44,932,160 |
| The total par value of the shares of national banks in said state, including the city of New York, for the period aforesaid, is . . . . . | $83,054,160 |
| And of the state banks . . . . . . . . . | 32,815,700 |

"10. That it is the intention of the defendants, unless restrained by injunction, to collect the said tax levied by them

against the shareholders of the said complainant upon said shares by the use of all needful legal process.

"11. That any statutes of the United States or of the State of New York may be cited and relied upon before the said court as if herein fully set forth."

From a decree dismissing the bill the present appeal was prosecuted.

*Mr. Charles W. Wells* (with whom was *Mr. Frederick W. Whitridge* and *Mr. Willard Brown*), for appellant, cited: *Hepburn* v. *School Directors,* 23 Wall. 480; *Adams* v. *Nashville,* 95 U. S. 19; *People* v. *Weaver,* 100 U. S. 539; *Cummings* v. *National Bank,* 101 U. S. 153; *Evansville Bank* v. *Britton,* 105 U. S. 322; *Boyer* v. *Boyer,* 113 U. S. 689; *First Nat. Bank of Utica* v. *Waters,* 7 Fed. Rep. 152; *Stratton* v. *Collins,* 43 N. J. Law (14 Vroom), 562; *McMahon* v. *Palmer,* 102 N. Y. 176; *Van Allen* v. *The Assessors,* 3 Wall. 573; *Farrington* v. *Tennessee,* 95 U. S. 679; *Sturges* v. *Carter,* 114 U. S. 511; *New Orleans* v. *Houston,* 119 U. S. 265; *Albany City Nat. Bank* v. *Maher,* 6 Fed. Rep. 417; *Commonwealth* v. *Hamilton Co.,* 12 Allen, 298; *People* v. *Barton,* 29 How. Pr. 371; *Porter* v. *Railroad Co.,* 76 Ill. 561; *Bradley* v. *The People,* 4 Wall. 459; *People* v. *Commissioners,* 4 Wall. 244; *People ex rel. &c.* v. *Davenport,* 91 N. Y. 574; *People ex rel. &c.* v. *Beers,* 67 How. Pr. 219; *People* v. *Mechanics' Savings Institution,* 92 N. Y. 7; *People ex rel. Trowbridge* v. *Commissioners,* 4 Hun, 595; *People ex rel. Pac. Mail Steamship Co.* v. *Commissioners,* 5 Hun, 200.

*Mr. James C. Carter,* for appellee, cited: *Boyer* v. *Boyer,* 113 U. S. 689; *Van Allen* v. *The Assessors,* 3 Wall. 573; *People* v. *Commissioners,* 4 Wall. 244; *Nat. Exchange Bank* v. *Wells,* 18 Blatchford 478; *People* v. *Weaver,* 100 U. S. 539; *Tennessee* v. *Whitworth,* 117 U. S. 129; *First Nat. Bank of Utica* v. *Waters,* 19 Blatchford, 239; *Evansville Bank* v. *Britton,* 105 U. S. 322; *Oswego Starch Factory* v. *Dolloway,* 21 N. Y. 449; *People ex rel. &c.* v. *Commissioner of Taxes,* 95 N. Y. 554; *People ex rel. &c.* v. *Davenport,* 91

N. Y. 574; *People* v. *Fire Association*, 92 N. Y. 311; *Vicks-burg &c. Railroad* v. *Dennis*, 116 U. S. 665; *Adams* v. *Nash-ville*, 95 U. S. 19; *Hepburn* v. *School Directors*, 23 Wall. 480.

MR. JUSTICE MATTHEWS, after stating the case as above reported, delivered the opinion of the court.

Section 5219 of the Revised Statutes of the United States is as follows:

"Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares in assessing taxes imposed by authority of the State within which the association is located; but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the State, subject only to the two restrictions that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state; and that the shares of any national banking association owned by non-residents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county, or municipal taxes to the same extent, according to its value, as other real property is taxed."

In the present case no question is raised by the appellant as to the validity of § 312, c. 409, of the Laws of New York of 1882, considered by itself, nor in reference to the rule of valuation or assessment which it prescribes. No exception is taken to the form of the assessment, nor is the case based in any degree upon the dereliction of the assessing officers in the discharge of their duties, there being no allegation and no proof that they have not performed their whole duty under the statutes of the State.

The proposition which the appellant seeks to establish is, that the State of New York, in seeking to tax national bank shares, has not complied with the condition contained in

§ 5219 of the Revised Statutes, that such taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, "in that, it has by its legislation · expressly exempted from all taxes in the hands of the individual citizens numerous species of moneyed capital, aggregating in actual value the sum of $1,686,000,000, whilst it has by its laws subjected national bank shares in the hands of individual·holders thereof (aggregating a par value of $83,000,000), and state.bank shares (having a like value of $22,815,700), to taxation upon their full actual value, less only a proportionate amount of the real estate owned by the bank." This exemption, it is claimed, is of a "very material part relatively" of the whole, and renders the taxation of national bank shares void.

The exemptions thus referred to are classified as follows:

1st. The shares of stock in the hands of the individual shareholders of all incorporated "moneyed or stock corporations deriving an income or profit from their capital or otherwise, incorporated by the laws of New York, not including trust companies and life insurance companies, and state or national banks." The value of such shares, it is admitted, amounts to $755,018,892.

2d. Trust companies and life insurance companies. The actual value of the shares of stock in trust companies amounts to $32,018,900, and the actual value of the shares in life insurance companies amounts to $3,540,000, which life insurance companies, it is admitted, are the owners of personal property consisting of mortgages, loans, stocks, and bonds to the value of $195,257,305.

3d. Savings banks and the deposits therein. The deposits amount to $437,107,501, and an accumulated surplus to $68,669,001.

4th. Certain municipal bonds issued by the city of New York under an act passed in 1880, of the value of $13,467,000.

5th. Shares of stocks in corporations created by states other than New York, in the hands of individual holders, residents of said state, amounting to $250,000,000.

It is argued by the appellant that these exemptions bring

the case within the decision of *Boyer* v. *Boyer*, 113 U. S. 689. In that case, referring to the legislation of Pennsylvania, it was said: "The burden of county taxation imposed by the latter act has at all events been removed from all bonds or certificates of loan issued by any railroad company incorporated by the State; from shares of stock in the hands of stockholders of any institution or company of the State which in its corporate capacity is liable to pay a tax into the State treasury under the act of 1859; from mortgages, judgments, and recognizances of every kind; from moneys due or owing upon articles of agreement for the sale of real estate; from all loans, however made, by corporations which are taxable for state purposes when such corporations pay into the State treasury the required tax on such indebtedness."

This enumeration of exempted property, the amounts of which were stated in the bill and admitted by the demurrer, was held to include such a material portion relatively of the moneyed capital in the hands of individual citizens as to make the tax upon the shares of national banks an unfair discrimination against that class of property, but no attempt was made in the opinion of the court to define the meaning of the words "moneyed capital in the hands of individual citizens" as used in the statute, or to enumerate all the various kinds of property or investments that came within its description, or to show that shares of stock in the hands of stockholders of every institution, company, or corporation of a state, having a capital employed for the purpose of earning dividends or profits for its stockholders, were taxable as moneyed capital in the hands of individual citizens.

It is accordingly contended on behalf of the appellees in the present case, 1st, that the shares of stock in the various companies incorporated by the laws of New York as moneyed or stock corporations, deriving an income or profit from their capital or otherwise, including trust companies, life insurance companies, and savings banks, are not moneyed capital in the hands of the individual citizen within the meaning of the act of Congress; 2d, that if any of them are, then the corporations themselves are taxed under the laws of New York in such a

manner and to such an extent that the shares of stock therein are in fact subject to a tax equal to that which is assessed upon shares of national banks; and 3d, that if there are any exceptions, they are immaterial in amount and based upon considerations which exclude them from the operation of the rule of relative taxation intended by the act of Congress.

In view of the nature of the contention between the parties to this suit, and the extent and value of the interests involved, it becomes necessary to review with care the previous decisions of this court upon the same subject, and to endeavor to state with precision the rule of relative taxation prescribed to the states by Congress on shares of national banks.

. The national banking act of 1864, 13 Stat. 111, in addition to the restrictions now imposed upon the state taxation of national bank shares, declared "that the tax so imposed, under the laws of any state, upon the shares of any of the associations authorized by this act, shall not exceed the rate imposed upon the shares in any of the banks organized under the authority of the State, where such association is located." In the reënactment of this statute in 1868, 15 Stat. 34, this proviso was omitted. The case of *Van Allen* v. *The Assessors*, 3 Wall. 573, was decided under the act of 1864 as originally enacted. In that case, the taxing law of New York, which was in question, was held to be invalid, because it levied no taxes upon shares in state banks at all, the tax being assessed upon the capital of the banks after deducting that portion which was invested in securities of the United States; and it was held that this tax on the capital was not a tax on the shares of the stockholders equivalent to that on the shares in national banks. It was also decided in that case that it was competent for the states, under the permission of Congress, to tax the shares of national bank stock held by individuals, notwithstanding the capital of the bank was invested in bonds of the United States which were not subject to taxation.

It appears, therefore, as the result of the decision in that case, that a tax upon the capital of a state bank, levied upon the value thereof, after deducting such part as was invested in non-taxable government bonds, was less than an equivalent .

for a tax upon the shares of national banks from which no such deduction was permitted. Accordingly, in the case of *People* v. *Commissioners*, 4 Wall. 244, the complaint was made on behalf of individual owners of national bank stock taxed in New York, that no deduction was permitted to them from the value of their shares on account of the capital of the bank being invested in non-taxable government bonds, while such deduction was allowed in favor of insurance companies and individuals in the assessment for taxation of the value of their personal property; and it was contended, therefore, that the relators in that case were taxed upon their shares of national bank stock at a greater rate than was assessed upon other moneyed capital in the hands of individual citizens. In reference to this supposed inequality the court said: "The answer is, that, upon a true construction of this clause of the act, the meaning and intent of the law-makers were, that the rate of taxation of the shares should be the same or not greater than upon the moneyed capital of the individual citizen, which is subject or liable to taxation. That is, no greater proportion or percentage of tax in the valuation of the shares should be levied than upon other moneyed taxable capital in the hands of the citizens. This rule seems to be as effectual a test to prevent unjust discrimination against the shareholders as could well be devised. It embraces a class which constitutes the body politic of the state, who make its laws and provide for its taxes. They cannot be greater than the citizens impose upon themselves. It is known as sound policy that in every well-regulated and enlightened state or government, certain descriptions of property and also certain institutions, — such as churches, hospitals, academies, cemeteries, and the like, — are exempt from taxation; but these exemptions have never been regarded as disturbing the rates of taxation, even where the fundamental law had ordained that it should be uniform" (p. 256). The court then proceeded to show that the exclusion, as the subject of taxation, of government securities held by individuals, from their moneyed capital, was by authority of the United States, and hence it would be a contradiction to infer that Congress meant to include the same government securities

as a part of that moneyed capital which it required to be taxed by the states at a rate equal to that imposed by the latter. upon the shares held by individuals of national bank stock.

The other objection taken to the validity of the tax complained of was, that insurance companies created under the laws of the state were authorized to deduct from the amount of their capital and surplus profits, for purposes of taxation, such part as was invested in United States securities.  In reference to this the court said :. " The answer is, that this clause does not refer to the rate of assessments upon insurance companies as a test by which to prevent discrimination against the shares; that is, confined to the rate of assessments upon moneyed capital in the hands of individual citizens.  These institutions are not within the words or the contemplation of Congress; but even if they were, the answer we have already given to the deduction of these securities in the assessment of the property of individual citizens is equally applicable to them." (p. 257).

In *Lionberger* v. *Rouse*, 9 Wall. 468, it was held that the proviso originally contained in the act of 1864, and omitted from the act of 1868, expressly referring to state banks, was limited to state banks of issue.  The court said (p. 474): "There was nothing to fear from banks of discount and deposit merely, for in no event could they work any displacement of national bank circulation."  Of course, so far as investments in such banks are moneyed capital in the hands of individuals, they are included in the clause as it now stands.

In the case of *Hepburn* v. *School Directors*, 23 Wall. 480, it was decided to be competent for the state to value, for taxation, shares of stock in a national bank at their actual value, even if in excess of their par value, provided thereby they were not taxed at a greater rate than was assessed upon other moneyed capital in the hands of individual citizens of the State. It was a further question in that case whether the exemption from taxation by statute of " all mortgages, judgments, recognizances, and moneys owing upon articles of agreement for the sale of real estate" made the taxation of shares in national banks unequal and invalid.  This was decided in the negative

on the two grounds, 1st, that the exemption was founded upon the just reason of preventing a double burden by the taxation both of property and of the debts secured upon it; and, 2d, because it was partial only, not operating as a discrimination against investments in national bank shares. The court said: "It could not have been the intention of Congress to exempt bank shares from taxation because some moneyed capital was e. ipt" (p. 485).

e subject was further considered in the case of *Adams* v. *Na. hv lle*, 95 U. S. 19. One of the questions in that case had ref ance to an exemption from taxation by state authority of interest-paying bonds issued by the municipal corporation of the city of Nashville, in the hands of individuals. It was held that the exemption did not invalidate the assessment upon the shares of national banks. The court said (p. 22): "The act of Congress was not intended to curtail the state power on the subject of taxation. It simply required that capital invested in national banks should not be taxed at a greater rate than like property similarly invested. It was not intended to cut off the power to exempt particular kinds of property, if the legislature chose to do so. Homesteads to a specified value, a certain amount of household furniture, (the six plates, six knives and forks, six teacups and saucers of the old statutes,) the property of clergymen to some extent, school-houses, academies and libraries are generally exempt from taxation. The discretionary power of the legislatures of the states over all these subjects remains as it was before the act of Congress of June, 1864. The plain intention of that statute was to protect the corporations formed under its authority from unfriendly discrimination by the states in the exercise of their taxing power."

In *People* v. *Weaver*, 100 U. S. 539, it was held that the prohibition against the taxation of national bank shares at a greater rate than that imposed upon other moneyed capital in the hands of individual citizens could not be evaded by the assessment of equal rates of taxation upon unequal valuations, and that consequently where the state statute authorized individuals to deduct the amount of debts owing by them from

the assessed value of their personal property and moneyed capital subject to taxation, the owners of shares of national banks were entitled to the same deduction. The cases of *The Supervisors* v. *Stanley*, 105 U. S. 305; *Hills* v. *Exchange Bank*, 105 U. S. 319; *Evansville Bank* v. *Britton*, 105 U. S. 322; and *Cummings* v. *National Bank*, 101 U. S. 153, are applications of the same principle.

The rule of decision in *Van Allen* v. *Assessors*, 3 Wall. 573, is not inconsistent with that followed in *People* v. *The Commissioners*, 4 Wall. 244. In the former of these cases the comparison was between taxes levied upon the shares of national banks and taxes levied upon the capital of state banks. In the valuation of the capital of state banks for this taxation, nontaxable securities of the United States were necessarily excluded, while in the valuation of shares of national banks no deduction was permitted on account of the fact that the capital of the national banks was invested in whole or in part in government bonds. The effect of this was, of course, to discriminate to a very important extent in favor of investments in state banks, the shares in which *eo nomine* were not taxed at all, while their taxable capital was diminished by the subtraction of the government securities in which it was invested, and against national bank shares taxed without such deduction at a value necessarily and largely based on the value of the government securities in which by law a large part of the capital of the bank was required to be invested. In the case of *People* v. *The Commissioners*, the comparison was not between the taxation of shareholders in national banks and of shareholders in state banking institutions, but between the taxation of national bank shares and that of personal property held by individuals and insurance companies, from the valuation of which the deduction was permitted of the amount of nontaxable government securities held by them respectively. The general ground of the decision was, that the exemption was not an unfriendly discrimination against investments in national banks in favor of other investments of a similar and competing character. It was held that the exemption under state authority, of United States securities, which it was not lawful for the

state to tax, could not be considered an unwarranted exemption in that case. It was also held that the language of the act of Congress which fixed the rate of taxation upon national bank shares, by reference to that imposed by the State " upon other moneyed capital in the hands of individual citizens," excluded from the comparison moneyed capital in the hands of corporations, unless the corporations were of that character, such as state banks were held to be in the case of *Van Allen* v. *The Assessors*, that shares of stock in them fell within the description of "moneyed capital in the hands of individual citizens." In that way a distinction was established between shares of stock held in banking corporations and those held in insurance companies and other business, trading, manufacturing and miscellaneous corporations, whose business and operations were unlike those of banking institutions.

It follows, as a deduction from these decisions, that "moneyed capital in the hands of individual citizens" does not necessarily embrace shares of stock held by them in all corporations whose capital is employed, according to their respective corporate powers and privileges, in business carried on for the pecuniary profit of shareholders, although shares in some corporations, according to the nature of their business, may be such moneyed capital. The rule and test of this difference is not to be found in that quality attached to shares of stock in corporate bodies generally whereby the certificates of ownership have a certain appearance of negotiability, so as easily to be transferred by delivery under blank powers of attorney, and to be dealt in by sales at the stock exchange, or used as collaterals for loans, as though they were negotiable security for money. This quality, in a greater or less degree, pertains to all stocks in corporate bodies, the facility of their use in this way being in proportion to the estimated wealth and credit, present or prospective, of the corporation itself. Neither is the difference to be determined by the character of the investments in which, either by law or in fact, the bulk of the capital and the accumulated surplus of the corporation is from time to time invested. It does not follow, because these are invested in such a way as properly to constitute moneyed capi-

tal, that the shares of stock in the corporations themselves must necessarily be within the same description. Such is the case of insurance companies, in respect to which it was held, in *People* v. *The Commissioners*, that shares of stock in them were not taxable as "moneyed capital in the hands of individual citizens;" and that the language of the act of Congress does not include mor eyed capital in the hands of corporations. The true test of the distinction, therefore, can only be found in the nature of the business in which the corporation is engaged.

The key to the proper interpretation of the act of Congress is its policy and purpose. The object of the law was to establish a system of national banking institutions, in order to provide a uniform and secure currency for the people, and to facilitate the operations of the Treasury of the United States. The capital of each of the banks in this system was to be furnished entirely by private individuals; but, for the protection of the government and the people, it was required that this capital, so far as it was the security for its circulating notes, should be invested in the bonds of the United States. These bonds were not subjects of taxation; and neither the banks themselves, nor their capital, however invested, nor the shares of stock therein held by individuals, could be taxed by the States in which they were located without the consent of Congress, being exempted from the power of the States in this respect, because these banks were means and agencies established by Congress in execution of the powers of the government of the United States. It was deemed consistent, however, with these national uses, and otherwise expedient, to grant to the States the authority to tax them within the limits of a rule prescribed by the law. In fixing those limits it became necessary to prohibit the States from imposing such a burden as would prevent the capital of individuals from freely seeking investment in institutions which it was the express object of the law to establish and promote. The business of banking, including all the operations which distinguish it, might be carried on under state laws, either by corporations or private persons, and capital in the form of money might be

invested and employed by individual citizens in many single and separate operations forming substantial parts of the business of banking. A tax upon the money of individuals, invested in the form of shares of stock in national banks, would diminish their value as an investment and drive the capital so invested from this employment, if at the same time similar investments and similar employments under the authority of state laws were exempt from an equal burden. The main purpose, therefore, of Congress, in fixing limits to state taxation on investments in the shares of national banks, was to render it impossible for the State, in levying such a tax, to create and foster an unequal and unfriendly competition, by favoring institutions or individuals carrying on a similar business and operations and investments of a like character. The language of the act of Congress is to be read in the light of this policy.

Applying this rule of construction, we are led, in the first place, to consider the meaning of the words "other moneyed capital," as used in the statute. Of course it includes shares in national banks; the use of the word "other" requires that. If bank shares were not moneyed capital, the word "other" in this connection would be without significance. But "moneyed capital" does not mean all capital the value of which is measured in terms of money. In this sense, all kinds of real and personal property would be embraced by it, for they all have an estimated value as the subjects of sale. Neither does it necessarily include all forms of investment in which the interest of the owner is expressed in money. Shares of stock in railroad companies, mining companies, manufacturing companies, and other corporations, are represented by certificates showing that the owner is entitled to an interest, expressed in money value, in the entire capital and property of the corporation, but the property of the corporation which constitutes its invested capital may consist mainly of real and personal property, which, in the hands of individuals, no one would think of calling moneyed capital, and its business may not consist in any kind of dealing in money, or commercial representatives of money.

So far as the policy of the government in reference to national banks is concerned, it is indifferent how the States may choose to tax such corporations as those just mentioned, or the interest of individuals in them, or whether they should be taxed at all. Whether property interests in railroads, in manufacturing enterprises, in mining investments, and others of that description, are taxed or exempt from taxation, in the contemplation of the law, would have no effect upon the success of national banks. There is no reason, therefore, to suppose that Congress intended, in respect to these matters, to interfere with the power and policy of the States. The business of banking, as defined by law and custom, consists in the issue of notes payable on demand, intended to circulate as money where the banks are banks of issue; in receiving deposits payable on demand; in discounting commercial paper; making loans of money on collateral security; buying and selling bills of exchange; negotiating loans, and dealing in negotiable securities issued by the government, state and national, and municipal and other corporations. These are the operations in which the capital invested in national banks is employed, and it is the nature of that employment which constitutes it in the eye of this statute "moneyed capital." Corporations and individuals carrying on these operations do come into competition with the business of national banks, and capital in the hands of individuals thus employed is what is intended to be described by the act of Congress. That the words of the law must be so limited appears from another consideration; they do not embrace any moneyed capital in the sense just defined, except that in the hands of individual citizens. This excludes moneyed capital in the hands of corporations, although the business of some corporations may be such as to make the shares therein belonging to individuals moneyed capital in their hands, as in the case of banks. A railroad company, a mining company, an insurance company, or any other corporation of that description, may have a large part of its capital invested in securities payable in money, and so may be the owners of moneyed capital; but, as we have already seen, the shares of stock in such companies held by individuals are not moneyed capital.

The terms of the act of Congress, therefore, include shares of stock or other interests owned by individuals in all enterprises in which the capital employed in carrying on its business is money, where the object of the business is the making of profit by its use as money. The moneyed capital thus employed is invested for that purpose in securities by way of loan, discount, or otherwise, which are from time to time, according to the rules of the business, reduced again to money and reinvested. It includes money in the hands of individuals employed in a similar way, invested in loans, or in securities for the payment of money, either as an investment of a permanent character, or temporarily with a view to sale or repayment and reinvestment. In this way the moneyed capital in the hands of individuals is distinguished from what is known generally as personal property. Accordingly, it was said in *Evansville Bank* v. *Britton*, 105 U. S. 322: "The act of Congress does not make the tax on personal property the measure of the tax on the bank shares in the State, but the tax on moneyed capital in the hands of the individual citizens. Credits, money loaned at interest, and demands against persons or corporations are more purely representative of moneyed capital than personal property, so far as they can be said to differ. Undoubtedly there may be said to be much personal property exempt from taxation without giving bank shares a right to similar exemption, because personal property is not necessarily moneyed capital. But the rights, credits, demands, and money at interest mentioned in the Indiana statute, from which *bona fide* debts may be deducted, all mean moneyed capital invested in that way."

This definition of moneyed capital in the hands of individuals seems to us to be the idea of the law, and ample enough to embrace and secure its whole purpose and policy.

From this view, it follows that the mode of taxation adopted by the State of New York in reference to its corporations, excluding for the present trust companies and savings banks, does not operate in such a way as to make the tax assessed upon shares of national banks at a greater rate than that imposed upon other moneyed capital in the hands of individual citizens.

This is the conclusion reached on similar grounds by the Court of Appeals of New York. In the case of *McMahon* v. *Palmer*, 102 N. Y. 176, that court said: "Our system of laws with reference to the taxation of incorporated companies and capital invested therein, has been carefully framed with a view of reaching all taxable property and subjecting it to equality of burden, so far as that object is attainable in a matter so complex. In view of the wide variation in the employable value of such investments and the frequent mutations in their condition, it is by no means certain that this object has not been attained with reasonable accuracy. It is quite clear, from even this cursory review of the statutes, that if any discrimination is made by our laws in taxing capital invested, it is not to the prejudice of that employed in banking corporations. Even if this were not the result of the statute we are of opinion that investments in the shares of the companies named do not come within the meaning of that clause in the Federal statutes, referring to other moneyed capital in the hands of individuals. That phrase, as generally employed, distinguishes such capital from other personal property, and investments in the various manufacturing and industrial enterprises. And this is the sense in which it is used in our tax laws, as appears by reference to the statutes."

The cases of trust companies and savings banks require separate consideration. Section 312 of c. 409 of the act of 1882 is a reënactment of § 3 of c. 596 of the Laws of 1880, except that in the latter, trust companies were included with banks and banking institutions, so as to subject the stockholders therein to the same rule of assessment and taxation on the value of their shares of stock. The present statute omits them from the corresponding section. The consequence is, that trust companies are taxable, as other corporations under the act of 1857, for local purposes, upon the actual value of their capital stock. By c. 361 of the Laws of 1881, as amended, they are subjected to a franchise tax, in the nature of an income tax, payable to the state for state purposes. It is argued, from this legislation, in reference to the taxation of trust companies, that it discloses an

evident intent to discriminate in favor of the latter as between them and banks, including national banks; and it is argued that, considering the nature of the business in which trust companies are engaged, it is a material and unfriendly discrimination in favor of state institutions engaged to some extent in a competing business with that of national banks. Trust companies, however, in New York, according to the powers conferred upon them by their charters and habitually exercised, are not in any proper sense of the word banking institutions. They have the following powers: To receive moneys in trust and to accumulate the same at an agreed rate of interest; to accept and execute all trusts of every description committed to them by any person or corporation or by any court of record; to receive the title to real or personal estate on trusts created in accordance with the laws of the state and to execute such trusts; to act as agent for corporations in reference to issuing, registering, and transferring certificates of stock and bonds, and other evidences of debt; to accept and execute trusts for married women in respect to their separate property; and to act as guardian for the estates of infants. It is required that their capital shall be invested in bonds and mortgages on unincumbered real estate in the State of New York worth double the amount loaned thereon, or in stocks of the United States or of the State of New York, or of the incorporated cities of that state.

It is evident, from this enumeration of powers, that trust companies are not banks in the commercial sense of that word, and do not perform the functions of banks in carrying on the exchanges of commerce. They receive money on deposit, it is true, and invest it in loans, and so deal, therefore, in money and securities for money in such a way as properly to bring the shares of stock held by individuals therein within the definition of moneyed capital in the hands of individuals, as used in the act of Congress. But we fail to find in the record any sufficient ground to believe that the rate of taxation, which in fact falls upon this form of investment of moneyed capital, is less than that imposed upon shares of stock in national banks.

.It appears from the tax laws of New York applicable to the subject, as judicially construed by the Court of Appeals of that state, that the capital stock of such a corporation is to be assessed at its actual value. The actual value of the whole capital stock is ascertained by reference, among other standards, to the market price of its shares, so that the aggregate value of the entire capital may be the market price of one multiplied by the whole number of shares. *Oswego Starch Factory* v. *Dolloway*, 21 N. Y. 449; *The People* v. *The Commissioners of Taxes*, 95 N. Y. 554. From this are to be deducted, of course, the real estate of the corporation otherwise taxed, and the value of such part of the capital stock as is invested in non-taxable property, such as securities of the United States. In addition to this, the corporation, as already stated, pays to the state, as a state tax, a tax upon its franchise based upon its income; the tax on the capital being for local purposes.

It is evident, we think, that taxation in this mode is, at least, equal to that upon the shares of individual stockholders, for if the same property was held for the same uses and taxed by the same rule, in the hands of individuals, as moneyed capital, it would be subject to precisely the same deductions; in addition to which, the individual would be entitled to make a further deduction of any debts he might owe. Upon these grounds, therefore, we are of opinion that this mode of taxing trust companies does not create the inequality which the appellant alleges.

In the case of savings banks, we assume that neither the bank itself nor the individual depositor is taxed on account of the deposits. The language of the statute (§ 4, c. 456, Laws of 1857) is as follows: "Deposits in any banks for savings, which are due to the depositors, . . . shall not be liable to taxation, other than the real estate and stocks which may be owned by such bank or company, and which are now liable to taxation under the laws of this State."

According to the stipulation in this case, the deposits in such banks amount to $437,107,501, with an accumulated surplus of $68,669,001. It cannot be denied that these deposits constitute moneyed capital in the hands of individuals within

the terms of any definition which can be given to that phrase; but we are equally clear that they are not within the meaning of the act of Congress in such a sense as to require that, if they are exempted from taxation, shares of stock in national banks must thereby also be exempted from taxation. No one can suppose for a moment that savings banks come into any possible competition with national banks of the United States. They are what their name indicates, banks of deposit for the accumulation of small savings belonging to the industrious and thrifty. To promote their growth and progress is the obvious interest and manifest policy of the state. Their multiplication cannot in any sense injuriously affect any legitimate enterprise in the community. We have already seen that by previous decisions of this court it has been declared that "it could not have been the intention of Congress to exempt bank shares from taxation because some moneyed capital was exempt;" *Hepburn* v. *School Directors*, 23 Wall. 480; and that "the act of Congress was not intended to curtail the state power on the subject of taxation. It simply required that capital invested in national banks should not be taxed at a greater rate than like property similarly invested. It was not intended to cut off the power to exempt particular kinds of property, if the legislature chose to do so." *Adams* v. *Nashville*, 95 U. S. 19. The only limitation, upon deliberate reflection, we now think it necessary to add, is that these exemptions should be founded upon just reason, and not operate as an unfriendly discrimination against investments in national bank shares. However large, therefore, may be the amount of moneyed capital in the hands of individuals, in the shape of deposits in savings banks as now organized, which the policy of the State exempts from taxation for its own purposes, that exemption cannot affect the rule for the taxation of shares in national banks, provided they are taxed at a rate not greater than other moneyed capital in the hands of individual citizens otherwise subject to taxation.

It is further objected, on similar grounds, to the validity of the assessment complained of in this case, that municipal bonds of the city of New York, to the amount of $13,467,000, are

also exempted from taxation. The amount of the exemption in this case is comparatively small, looking at the whole amount of personal property and credits which are the subjects of taxation; not large enough, we think, to make a material difference in the rate assessed upon national bank shares; but, independently of that consideration, we think the exemption is immaterial. Bonds issued by the State of New York, or under its authority by its public municipal bodies, are means for carrying on the work of the government, and are not taxable even by the United States, and it is not a part of the policy of the government which issues them to subject them to taxation for its own purposes. Such securities undoubtedly represent moneyed capital, but as from their nature they are not ordinarily the subjects of taxation, they are not within the reason of the rule established by Congress for the taxation of national bank shares.

The same considerations apply to what is called an exemption from taxation of shares of stock of corporations created by other states and owned by citizens of New York, which it is agreed amount to at least the sum of $250,000,000. It is not pretended, however, that this exemption is based upon the mere will of the legislature of the State. The courts of New York hold that they are not the proper subjects of taxation in the State of New York, because they have no *situs* within the territory for that purpose. *Hoyt* v. *Commissioners of Taxes*, 23 N. Y. 224; *People ex rel. Trowbridge* v. *The Commissioners*, 4 Hun, 595. The objection would be equally good if made to the non-taxation of real estate owned by citizens of New York, but not within its limits. Clearly the property to be taxed under the rule prescribed for the taxation of national bank shares must be property which, according to the law of the State, is the subject of taxation within its jurisdiction.

Upon these grounds, substantially the same as those on which the Circuit Judge proceeded, 28 Fed. Rep. 776, we are of opinion that the appellant is not entitled to the relief prayed for.

The decree of the Circuit Court is, therefore, *Affirmed.*

Mr. Justice BLATCHFORD took no part in the decision of this case.