J. S. ROBERTS, as Tax Collector of the County of Escambia, STATE OF FLORIDA, *Appellant*, v. THE AMERICAN NATIONAL BANK OF PENSACOLA, a corporation, etc., *Appellee*.

Division B.

Opinion filed April 1, 1929.

412

414

*Fred H. Davis,* Attorney General, and *H. E. Carter,* Assistant, for Appellants;

*Watson & Pasco & Brown,* for Appellee.

WHITFIELD, P. J.—This appeal is from a final decree adjudging "to be invalid and void", an assessment of State and County taxes for the year 1925 on the shares in a national bank, and perpetually enjoining the collection of the tax as assessed; an order overruling a demurrer to the bill

of complaint and granting a temporary injunction having been affirmed on appeal. Roberts, as Tax Collector, v. American National Bank of Pensacola, 94 Fla. 427, 115 So. R. 261.

The shares in a national banking association cannot be taxed under State authority except as Congress consents and then only in conformity with the restrictions attached to such consent given. Des Moines National Bank v. Fairweather, 263 U. S. 103, 106, 44 Sup. Ct. R. 23, 68 L. Ed. 191; First National Bank of Guthrie Center v. Anderson, 269 U. S. 341, 347, 46 Sup. Ct. R. 135, 70 L. Ed. 295.

The United States Code Annotated contains the following:

Sec. 548. State taxation. The Legislature of each State may determine and direct, subject to the provisions of this section, the manner and place of taxing all shares of national banking associations located within its limits. The several States may tax said shares, or include dividends derived therefrom in the taxable income of an owner or holder thereof, or tax the income of such associations, provided the following conditions are complied with:

1. (a) The imposition by said State of any one of the above three forms of taxation shall be in lieu of the others.

(b) In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State coming into competition with the business of national banks: *Provided*, that bonds, notes, or other evidence of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and rep-

resenting merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section.

(c) In case of a tax on the net income of an association, the rate shall not be higher than the rate assessed upon other financial corporations nor higher than the highest of the rates assessed by the taxing State upon the net income of mercantile, manufacturing and business corporations doing business within its limits.

(d) In case the dividends derived from the said shares are taxed, the tax shall not be a greater rate than is assessed upon the net income from other moneyed capital.

2. The shares or the net income as above provided of any national banking association owned by nonresidents of any State, or the dividends on such shares owned by such nonresidents, shall be taxed in the taxing district where the association is located and not elsewhere; and such association shall make return of such income and pay the tax thereon as agent of such nonresident shareholders.

3. Nothing herein shall be construed to exempt the real property of associations from taxation in any State or in any subdivision thereof, to the same extent, according to its value, as other real property is taxed.

4. The provisions of section 5219 of the Rev. Stats. of the United States as in force prior to March 4, 1923, shall not prevent the legalizing, ratifying, or confirming by the States of any tax heretofore paid, levied, or assessed upon the shares of national banks, or the collecting thereof, to the extent that such tax would

be valid under said section. (R. S. Sec. 5219; Mar. 4, 1923, c. 267, 42 Stat. 1499).

This section was not intended to control the power of the state on the subject of taxation, or to prohibit the exemption of particular kinds of property, but to protect the capital invested in national bank shares from unfriendly discrimination by the states in the exercise of the taxing power. Adams v. Nashville (Tenn. 1877) 95 U. S. 19, 20, 24, L. Ed. 369; Mercantile Nat. Bank v. City of New York (C. C. N. Y. 1886) 28 Fed. R. 776, affirmed, (1887) 7 Sup. Ct. R. 826, 121 U. S. 138, 30 L. Ed. 895.

It was intended by this section to comprehensively control the subject with which it dealt and thus to furnish the exclusive rule governing state taxation as to the federal agencies created as provided in the section. Bank of California, National Ass'n. v. Richardson (1919) 248 U. S. 476, 39 Sup. Ct. R. 165, 63 L. Ed. 372, reversing (1917) 175 Cal. 813, 165 Pac. R. 152.

The Federal statute forbids States to tax national bank shares ''at greater rates than assessed on other moneyed capital of individual citizens, and was intended to prevent discrimination against moneyed capital of citizens invested in shares of national banks; and it is immaterial that state bank shares are taxed equally with shares of national banks.'' Minnesota Nat. Bank v. Anderson, 2 Fed. R. (2nd) 898; Eddy v. First Nat. Bank of Fargo, 275 Fed. R. 550.

The foregoing Act of Congress prescribes the full measure of the power of the state to impose taxes upon national banking associations or their shareholders. Any assessment not in conformity therewith is unauthorized and invalid. First Nat. Bank of Gulfport v. Adams 258 U. S. 362, 42 Sup. Ct. R. 323, 66 L. Ed. 661; People ex rel. Hanover Nat.

Bank of City of New York v. Goldfogle et al., 234 N. Y. 345, 137 N. E. R. 612; First Nat. Bank of Guthrie Center v. Anderson, 269 U. S. 341, 46 Sup. Ct. R. 135, 70 L. Ed. 295; Minnesota Nat. Bank v. Anderson, 2 Fed. R. (2nd) 897.

The purpose of the restriction contained in the Act of Congress consenting to State taxation of the shares in national banking associations, is to render it impossible for any State, in taxing the shares, "to create and foster an unequal and unfriendly competition with national banks, by favoring shareholders in State banks or individuals interested in private banking or engaged in operations and investments normally common to the business of banking. Mercantile National Bank v. New York, 121 U. S. 138, 155 (7 Sup. Ct. R. 826, 30 L. Ed. 895) ; Des Moines National Bank v. Fairweather, *supra,* 116 (44 Sup. Ct. R. 23)."

"The term 'other moneyed capital' in the restriction is not intended to include all moneyed capital not invested in national bank shares, but only that which is employed in such ways as to bring it into substantial competition with the business of national banks. Mercantile National Bank v. New York, *supra,* 157 (7 Sup. Ct. R. 826 ; Aberdeen Bank v. Chehalis County, 166 U. S. 440, 461, (17 Sup. Ct. R. 629, 41 L. Ed. 1069)."

"Moneyed capital is brought into such competition where it is invested in shares of state banks or in private banking; and also where it is employed, substantially as in the loan and investment features of banking, in making investments, by way of loan, discount or otherwise, in notes, bonds or other securities with a view to sale or payment and reinvestment. Mercantile National Bank v. New York, *supra,* 155-157 (7 Sup. Ct. R. 823) ; Palmer v. McMahon, 133 U. S. 660, 667-668 (10 Sup. Ct. R. 324, 33 L. Ed. 772) ; Talbot v. Silver Bow County, 139 U. S. 438-447, (11 Sup. Ct .R. 594, 35 L. Ed. 210)."

"The restriction is not intended to exact mathematical equality in the taxing of national bank shares and such other moneyed capital, nor to do more than require such practical equality as is reasonably attainable in view of the differing situations of such properties. But every clear discrimination against national bank shares and in favor of a relatively material part of other moneyed capital employed in substantial competition with national banks is a violation of both the letter and spirit of the restriction. People v. Weaver, 100 U. S. 539, (25 L. Ed. 705) ; Boyer v. Boyer, 113 U. S. 689, 701, (5 Sup. Ct. R. 706, 28 L. Ed. 1089 ; National Bank of Wellington v. Chapman, 173 U. S. 205, 216 (19 Sup. Ct. R. 407, 43 L. Ed. 669). First National Bank of Guthrie Center v. Anderson, County Auditor, 269 U. S. 341, text 347, 348, 46 Sup. Ct. R. 135, 138, (70 L. Ed. 295)." Roberts v. American Nat. Bank, *supra*, 94 Fla. 427, 115 So. R. 261.

The State constitution requires the legislature to provide for a uniform and equal rate of taxation and permits the legislature to provide for special rates on intangible property, which special rates have not as yet been provided for. The constitution also requires the legislature to prescribe regulations to secure a just valuation of all property both real and personal, with exceptions not material here. Sec. 1, Art. IX as amended at the general election 1924, Vol. 5, page 4401, Comp. Gen. Laws 1927.

The taxation statutes of the State define "real property," and also define "personal property" or "personal estate" as including "all public stocks or shares in all incorporated or unincorporated companies", and provide that the shares of national banks shall be assessed as personal property "but not at a greater rate than is assessed on other moneyed capital in the hands of individuals." Sec. 895, 896, 907, Comp. Gen. Laws 1927. The rate of taxation

in 1925 and subsequent years was the same on all property that is assessed. Ch. 11333, Acts 1925; Ch. 12415, Acts 1927.

A national bank may, on behalf of its stockholders, maintain a suit to enjoin the collection of a tax which has been unlawfully assessed on their shares by the State authorities. Hills v. Exchange Bank, 105 U. S. 319.

A national bank may maintain a suit in equity in behalf of its shareholders to enjoin the collection of taxes upon its shares claimed to be invalid; and, where the validity of the entire tax is contested, the complainant will not be required to pay any part of the tax as a condition to the granting of a preliminary injunction. First National Bank of Covington v. City of Covington et al., 103 Fed. R. 523.

In the bill of complaint the bank offers ''on behalf of its stockholders to do equity by paying any portion of said tax assessed as aforesaid that this court may decree to be legally and validly assessed.'' This offer was doubtless made in view of the organic provision that ''no person or corporation shall be relieved by any court from the payment of any tax that may be illegal, or illegally or irregularly assessed, until he or it shall have paid such portion of his or its taxes as may be legal, and legally and regularly assessed.'' Sec. 8, Art. IX, Constitution of Florida. See also Secs. 1008, 1038 Comp. Gen. Laws 1927.

But the contention here is that no part of the assessment is legal and that no part thereof has been legally and regularly assessed, because the restriction imposed by Congress upon its consent to tax the shares in national banks was not observed, in that complainant's shares were taxed while the shares in numerous other corporations as well as numerous individuals having large amounts of moneyed capital used in business for investment and reinvestment for profit, coming into competition with the business of the com-

plaintant national bank, were intentionally not assessed or taxed at all. See First National Bank of Hartford, Wisconsin, v. City of Hartford, 273 U. S. 548, 47 Sup. Ct. R. 462, 71 L. Ed. 767; First Nat. Bank of Covington v. City of Covington, 103 Fed. R. 523. See also City of Tampa v. Kaunitz, 39 Fla. 683, 63 Am. St. Rep. 202.

Where the shares in national banking associations and all other moneyed capital coming into competition with the business of a national bank are assessed for taxation purposes but a higher rate or a higher valuation is placed on the national bank shares than is placed on such other moneyed capital, an injunction is appropriate as to the illegal excess so levied, where such excess is readily ascertainable with reasonable accuracy from reliable data that is accessible to the court. See Pelton v. Commercial Nat. Bank of Cleveland, 101 U. S. 143, 25 L. Ed. 901; Cummings v. Nat. Bank, 101 U. S. 153, 25 L. Ed. 903; First Nat. Bank of Toledo v. Lucas County, 25 Fed R. 749; Whitney Nat. Bank v. Parker, 41 Fed. R. 402.

This is the rule contemplated by Chap. 8586, Acts 1921, Sec. 1038, Comp. Gen. Laws 1927, and by Sec. 2, Chap. 10023, Acts 1925; Sec. 1008, Comp. Gen. Laws 1927, the letter act being apparently confined to assessments upon real estate.

The law does not contemplate that the courts shall attempt to ascertain the amount of taxes that would be legally payable by a complainant if all of the property liable to taxation had been properly assessed where it appears that much property subject to the assessment was not assessed, since it is not practicable if possible to ascertain with any degree of certainty what the amount of complainant's tax would be had all property been properly assessed, particularly when the complaint is that large quantities of property subject to assessment were not as-

sessed at all. The remedy in such a case is a duly authorized and proper assessment of all property liable to be assessed.

In this case the entire assessment is shown to be invalid. It clearly appears that numerous chartered companies, if not also individuals in the county of Escambia, having large amounts of moneyed capital, use it in the business of investment and reinvestment for profit, such moneyed capital coming into competition with the business of the complainant national bank and not being merely personal investments not made in competition with the business of the complainant national bank; and that while the shares in the complainant national banking association are assessed for taxation, such other large amounts of moneyed capital though subject to assessment under the State statute, are not assessed at all and were systematically not intended to be assessed by the assessing officer, it being the custom of such officer to assess only real estate, visible personal property and bank shares in national and state banks. See Hannan v. First Nat. Bank, 269 Fed. R. 257; City of Tampa v. Kaunitz, 39 Fla. 683, 23 So. R. 416; 63 Am. St. Reports 202:

This inevitably results in imposing a tax upon the shares in the complainant national bank that is not in any part imposed upon the other moneyed capital in the hands of individual citizens of the State coming in competition with the business of the complainant national bank, which is a violation of the intent and purpose of the controlling Federal Statute, rendering the assessment invalid as an entirety, the competing moneyed capital not being assessed at all. See First Nat. Bank v. Lindsay, assessor, 45 Fed. R. 619. Injunction is the remedy. Lindsay v. First Nat. Bank, 156 U. S. 485, 15 Sup. Ct. R. 472, 39 L. Ed. 505; First Nat. Bank of Covington v. City of Covington, 103 Fed. R. 523;

Cooey v. Johnson, 95 Fla. 946, 117 So. R. Ill.; Camp Phosphate Co. v. Allen, 77 Fla. 341, 81 So. R. 503; Sec. 1039, Comp. Gen. Laws Fla. 1927.

The fact that the investment securities of a national bank are not assessed does not justify an illegal discrimination in assessing the shares in the national bank. A national bank's personal property is not subject to taxation by State authority. Rosenblatt v. Johnston, 104 U. S. 462, 26 L. Ed. 832; City and County of San Francisco v. Crocker-Woolworth Nat. Bank of San Francisco, 92 Fed. R. 273; Coving-City Nat. Bank v. City of Covington, 21 Fed. R. 484; Stapylton v. Thaggard, 91, Fed. R. 93; People v. Nat. Bank of D. O. Mills & Co., 123 Cal. 53, 55 Pac. R. 685, 69 Am. St. Reports 32, and notes.

The case of Commercial etc., v. Custer County, 76 Montana 45, 245 Pac. R. 259, and other similar cases (see First Nat. Bank of Glendive v. Dawson County, 66 Montana 321, 213 Pac. R. 1097) were reversed in Commercial Nat. Bank v. Custer County, 275 U. S. 502, 48 Sup. Ct. R. 155, 72 L. Ed. 395, "on the authority of First National Bank v. Hartford, 273 U. S. 548, 559, 560, 71 L. Ed. 767, 773, 774, 59 A. L. R. 1, 47 Sup. Ct. R. 462; Minnesota v. First National Bank, 273 U. S. 561, 567, 568, 71 L. Ed. 774, 779, 47 Sup. Ct. R. 468."

The shares in a national bank held by shareholders is quite a different property entity from the capital stock of the bank. Owensboro Nat. Bank v. City of Owensboro, 173 U. S. 664, 43 L. Ed. 850, 19 Sup. Ct. R. 537; Hannon v. First Nat. Bank, 269 Fed. R. 527; Weiser Nat. Bank v. Jeffreys, 14 Idaho 659, 95 Pac. R. 23. The shares may be assessed against their owners, but the capital stock of national banks cannot be taxed by State authority. Brown v. French, 80 Fed. R. 166.

The real property of a national banking association may

424

be taxed to the same extent, according to its value, as other real property is taxed and the shares in the bank may be duly assessed under State laws; but the personal property of a national bank is not subject to state or local taxation. See Owensboro Nat. Bank v. City of Owensboro, 173 U. S. 664, 19 Sup. Ct. R. 537, 43 L. Ed. 850; Rosenblatt v. Johnston, 104 U. S. 462, 26 L. Ed. 832; 92 Fed R. 273; 26 R. C. L. 110; 2 Cooley on Taxation (4th Ed.) Sec. 928.

Neither the Federal nor the State statute authorizes the capital stock, surplus and undivided profits of a national bank to be *eo nomine* assessed against the bank or against the shareholders in assessing shares in the bank as authorized by the Federal and State statutes. See First Nat. Bank of Gulfport, Miss. v. Adams, 258 U. S. 362, 42 Sup. Ct. R. 323; Stapylton v. Thaggard, 91 Fed. R. 93, 33, C. C. A. 353; Sec. 907 Comp. Gen. Laws Fla. 1927.

Affirmed.

STRUM, J., AND LOVE, Circuit Judge, concur.

TERRELL, C. J., AND ELLIS AND BROWN, J. J., concur in the opinion and judgment.

BUFORD, J., disqualified.