The opinion of the court was delivered by
Fenner, J.
The Act of the General Assembly No. 85 of 1888 provides that the assessment of taxable property in the parish of Orleans, to serve as the basis for ¿both State and municipal taxation, shall be made by a Board of State Assessors appointed for said parish, who are required to complete the'p’olls thereof by the 1st of March of each year. Notice by publication is to be given of such completion, and the rolls are to be exposed to public examination by the tax payers for a period of twenty days. Certain powers) of revision are delegated to the standing committee on assessments of the City Council of New Orleans (the nature and extent of which will be hereafter considered), which committee is required to meet on the 20th of March of each year and to hold sessions until the 10th of April, “to consider and examine into the applications of those *607 owners of assessed property who believe the assessors’ valuation to be in excess and beyond the actual cash valuation of the property so assessed.”
The said committee is authorized “to determine said applications and to report their action to the Oity Oouncil for its approval or rejection, and such decision by the council shall be final.”
Such action must be taken by the Oity Oouncil before the 1st day of June, before which date the law requires the rolls to be filed in the offices of the Recorder of Mortgages, the Tax Collector and the Auditor.
Corrections in valuations lawfully made by the Oity Oouncil are undoubtedly binding on the Board of Assessors, and must be entered on the rolls as the basis for taxation.
In the year 1889 the committee on assessment of the Oity Oouncil made numerous and important changes in the valuations on the assessments, and reported the same to the council, which body, at a meeting on the 16th of April, passed a motion approving the report. At the following meeting, on April 28, the Mayor objected to the action taken, on the ground that it was in violation of Sec. 9 of the Oity Charter, Act No. 20 of 1882, which provides that “No ordinance or resolution shall pass the council at the same session at which it was first offered, but any ordinance or resolution shall at its first offering be read in full, and shall lay over for one-week before being finally considered by the council.”
But, notwithstanding the Mayor’s protest, the council maintained and persisted in its action.
When the corrections thus made were reported to the Board of Assessors, they refused to receive or recognize the same, and proceeded to file their rolls, without such corrections, in the various offices required by law.
On the 27th of August, 1889, the Oity Oouncil passed, over the veto of .the Mayor, an ordinance directing the Oity Comptroller to make, upon the rolls deposited with him, the changes which had been adopted by the council, and to make out the city tax bills in accordance therewith.
Thereupon the Board of Liquidation of the Oity Debt instituted the present action, in which an injunction is sought against’the Oity Comptroller, the Oity Treasurer and the Board of Assessors, pro *608 hibiting them from making said changes in the rolls, and from complying with said ordinance and collecting taxes in accordance therewith.
The Board of Liquidation is a corporation created by the State, charged with certain powers and duties touching the liquidation of the debt of the city, and is entitled to receive and administer the interest taxes levied by the city, amounting, under existing laws, to one-half the entire city tax. The board is therefore directly interested in seeing that the taxes shall be collected according to law.
The grounds of the action are twofold, viz:
1. That the entire action of the City Council in the matter of correcting and changing the assessment rolls was null, void, and of no effect, because the City Council did not, within the time fixed 'by law, “ approve ” the changes reported by the committee on assessment by an ordinance or resolution adopted in accordance with Sec. 9 of the City Charter above quoted.
The language of the law regulating the action to be taken by the City Council is as follows: “ The said committee shall * * report their action at once to the City Council for its approval or rejection, and such decision by the council shall be final, unless set aside in accordance with Art. 203 of the constitution.” The committee did seasonably report to the council, and that the council, by a vote of twenty-three yeas to three nays, passed a motion approving said report.
Did this action embody and signify the “ approval” required by the terms of the law?
The Common Council, upon due consideration on the objection of the Mayor, determined that this was the proper method of expressing its approval, and we should not overrule their construction of the law regulating the method of discharging their functions, unless convinced that it is manifestly erroneous and untenable. We can not say couthe neil erred.
The Sec. 9 of the City Charter obviously refers to ordinances and resolutions, which are, as expressed in Sec. 20, to have “the force of law,” which require to be transmitted to the Mayor for his consideration, which he may either sign or veto, and which, in the latter case, do not become laws unless passed over his veto by the requisite majority of two-thirds.
*609 The action here involved no function of law making. It was simply an expression of the will of the council, approving the' report of the committee, which was all the statute required.
The action conclusively shows that the council approved the report. It is not a law in any sense; it is a simple decision by the council of a question required to be submitted to it under the statute, viz: Shall the report of the committee be approved or rejected ?
2. The second ground for the injunction is far less sweeping in its scope. It attacks the specific changes made by the committee and the council in the assessment of the shares of stock held by individual share holders in the various banks of the city, on the ground that the action of the committee, approved by the council, was ultra vires, null and void.
Sec. 27 of the Act 85 of 1888 expressly provides that “No assessment shall hereafter be made under that name, as (of?) the capital stock of any National bank, State bank, etc., whose capital stock is represented by shares, but the actual shares shall be assessed to the shareholders,” etc.
Acting under this direction the Board of Assessors entered upon the rolls a valuation of said shares of stock.
The functions of .the committee of assessments of the Common Council, in the matter of reducing assessments, is very concisely and explicitly defined in Sec. 26 of the Act, in the following words: “The said committee on assessments shall meet on the 20th day of March * * to consider and examine into the applications of those owners of assessed property who believe the assessors’ valuation to be in excess of and beyond the actual cash value of the property so assessed. Said committee shall determine upon said applications and report their action to the City Council for its approval or rejection,” etc. ■
Not another word exists in the statute authorizing the committee to exercise any other power in the reduction of assessment than that thus pointed out. It is simple and well defined, viz: to determine whether or not the valuation exceeds “ the actual cash value of the property assessed,” and, if finding that it does, to reduce the valuation accordingly.
We have hitherto considered this subject in construing Sec. 9 of *610 Act 107 of 1884, of which the section now before us is an exact copy, and we there held that the power of the council was limited and that its action in excess of such limit was void. Mercier vs. New Orleans, 38 An. 958.
The record here shows that the Board of Assessors entered on the-rolls the shares of stock-in the different banks and assessed their value. From this valuation they deducted, as directed by the law,, the value of the real estate and other corporate values which had been taxed directly to the bank, and the difference was run out as. the taxable valuation of the stock.
The council committee did not reduce or alter the valuation of the-shares as fixed by the assessors; on the contrary they adopted the same; but they undertook to deduct therefrom the value of nontaxable securities belonging to each bank and only extended the residue as the taxable value.
It is perfectly evident that this was not an exercise of the power of valuation, but an exercise of the power of exemption. The council said in effect: “We do not pretend that* the valuation of these shares by the assessors exceeds their actual cash value; on the contrary we adopt and approve their valuation; but we choose to exempt a certain portion of that value from taxation, and therefore we deduct it.”
It is impossible for us to recognize the existence of such a power-in the council. It would be giving to the council a power not even possessed by the Legislature itself, and to place .the creature above-the creator.
The deductions were made in disregard of the very recent decision of this court that they were unauthorized by law. Bank of Shreveport vs. Board, 41 An. 181.
We can only account for the action of the council on the theory that, as the matter had been but once determined, it was hoped that-the court might, on a second hearing, recede from its position. If it were a question of policy many reasons have been urged which are. of weight.
But as a question of law we have never had a question submitted to us as to which express constitutional legal mandates and authoritative precedents left us so little discretion.
The following are the propositions on which the decision rests, not *611 one of which can be controverted, and which taken together lead inexorably to the conclusion reached. They are:
1. The tax is levied, not on the capital or stock of the corporation, but on the shares as the property of the individual share holders. Such is the express language of the law:
“ No assessment shall hereafter be made under that name, as the capital stock of any bank, etc., whose capital stock is represented by shares, but the actual shares shall be assessed to the shareholders,” etc.
2. If the shares are taxed they must be taxed according to their value. So says the Constitution: “All property must be taxed m proportion to its value, to be ascertained as directed by law.”
8. No portion of its value so ascertained can be exempted from taxation by mere legislative direction. So says the Constitution: “The following property shall be exempt and no other.” And such has been the consistent jurisprudence of this court in very numerous decisions.
4. No portion of the value of shares in banks is exempt from taxation on the ground that the capital of the banks is invested in nontaxable securities. So the Supreme Court of the United States has distinctly and repeatedly held. Mercantile Bank vs. New York, 121 U. S. 145, and numerous prior eases there cited and reviewed.
The same principle has been substantially reiterated in a case not yet reported.
So far as United States bonds were concerned this was distinctly a Federal question, and the decisions of the Federal Supreme Court thereon are of paramount authority.
5. If the value represented by the capital invested in United States bonds is not exempt, it is impossible to exempt the like value represented by investments in State and city securities.
These propositions being admitted, how can the conclusion be evaded? The Legislature had no more right to say that in assessing shares of stock, the assessors shall deduct from their value as ascertained by law, the amount of the non-taxable securities in which the capital of the bank is invested, than it would have to direct them to deduct from the value of the plantations of the State the value of the improvements thereon. Such deductions amount to an exemption of the values deducted from taxation, and as the paramount law decrees no such exemption, the Legislature is powerless to make it, *612 or, as we said in the Shreveport Bank case, “When the Legislature deals with an object of'taxation, it can exempt no part of its ascertained value not exempted by-paramount law.”
Fortunately the Legislature of the State is now in session. If, instead of taxing the shares of .banks to the individual share holders, it should see fit to revert to the former system of taxing the capital of the corporations, different questions would be presented.
The judge a quo granted and perpetuated the injunction as prayed for. It must be modified so as to apply only to the shares of stock in the banks named in the petition.
It is, therefore, ordered and decreed that the judgment appealed from-'be amended so as to read as .follows, viz: It is ordered, adjudged and decreed that there be judgment, in favor of plaintiffs and against the defendants enjoining and..prohibiting them from enforcing the changes directed by the City Council in the assessment of the shares of stock in the various banking corporations named in the petition and from collecting or receiving taxes thereon on any assessments other than those made by .the Board of Assessors,, and that, in other respects, the preliminary injunction be dissolved. And that, as thus amended, the .judgment appealed from be affirmed, appellee to pay cost of this appeal.
Justice Breaux, not having been present when the case was submitted, takes no part.