The opinion of the court was delivered by
Watkins, J.
In pursuance of the provisions of Section 54 of Act 85 of 1888, the State Tax Collector of the first district of the City of New Orleans proceeded by rule against the Sun Insurance Company, to compel it -to surrender certain personal property of its share holders, which had been assessed' for State taxes in 1889, and which property consisted of shares of stock of said corporation.
*1174 The collector demands the surrender of the shares of stock of said corporation, or so much thereof as may be necessary to realize, at public sale, the amount of the taxes due thereon, with interest, penalties, cost and attorney’s fees.
In the alternative he demands of the corporation the amount of money due under said assessment, it being §2863.40.
He founds his rights to make this demand, against the insurance company, and to enforce against the shares of its stock holders the tax in question, on the 27th Section of Act 85 of 1888, same being the general revenue law of that year.
The defendant in rule resists the demands of the Tax Collector on several grounds.
It first tendered a plea of no cause of action as a peremptory exception,’ which is to the effect that Section 27 and other provisions of Act 85 of 1888 are null and void, because they are in conflict with the 210th Article of the Constitution, forbidding the collection of taxes by suit; and the sense of which is averred to be, that any other mode of collecting taxes than by seizure and sale of the property assessed, is prohibited, and the same having been overruled, it filed an answer.
The following points, substantially, are therein set out, viz:
1. A denial of any taxes being due by the corporation for the shareholders, “by reason of the fact that under the provisions of Section 27 of Act 85 of 1888 the said share holders were entitled to have the pro rata of all property owned by the defendant at the time of the assessment, and exempted from taxation, deducted from the amount of taxes assessed against each share; that said deduction must be made before the aggregate amount of taxes due could be legally ascertained; that the Board of Assessors was duly advised and informed of the amount of the exempted property, but failed to make any deduction on account of same, whereby the assessment of taxes against the defendant company was rendered illegal.”
The exempt property, the value of which the corporation claims should be deducted, is specified as State and city bonds of the value of $485,124.08.
And tiie averment is made that the exempt property is worth more than the company’s shares of stock, and that a proper deduction thereof from the assessment, would reduce it to nothing, and annihilate it completely.
*1175 2. It is alleged that if the value of this exempt property should not be deducted in estimating the amount of taxes due on the shares of the company’s stock, then said Section 27 of Act 85 of 1888 is unconstitutional and void, because it contravenes the 203d Article of the Constitution, which provides that taxation shall be equal and uniform throughout the territorial limits of the authority levying the tax— the alleged effect of such'a construction of the act being, to make discriminations against corporations in favor of moneyed capital in the hands of individuals who are engaged in making loans of money on interest, as corporations are — and, as an instance of such want of uniformity in the operation of said statute, reference is made to the national banking associations created under certain acts of Congress, with whom defendant comes in competition in such business.
Therefore, the charge is made “ that a law which either does not tax the shares of stock of national • banking associations at all, or permits the deduction of the v. lue of non-taxable securities as ' aforesaid, while taxing the shares of all other corporations, without permitting any such deductions, lacks uniformity and equality, and is thus violative of Article 203 of the Constitution of the State.”
3. That if said Section 27 of Act 85 of 1888 contemplates and requires that the value of the aforementioned bonds shall not be deducted from an assessment of the shares of stock of the defendant, then said section is violative of Article 1, Section 10, of the Constitution of the United States, same being an impairmentof the contracts under which said bonds were issued, and of the laws of this State, and of the decisions of the Supreme Court thereof, having the force and effect of contracts, on the faith of which said bonds were issued to and held by the corporation. And the defendant specifies ActNo. 3 of 1860, which exempts consolidated bonds of the City of New Orleans from any and all taxation; and the opinion of this court in State ex rel. D.a Ponte vs. Board of Assessors, 35 An. 651, wherein it is alleged to have been announced that it is the settled policy of the State that bonds of the City of New Orleans were and should remain wora-taxable. And it is further averred that not deducting from the assessment of the stock holders the value of the aforesaid bonds, was and is an actual though indirect taxation of the bonds themselves, “and a violation of good faith, impairing the obligation of the contract of loan, and therefore unconstitutional and void,’” *1176 there existing “the same want of power in the State to thus indirectly tax its bonds as to tax them directly.”
I.
As we announced in the beginning of this opinion, the Tax Collector has proceeded by rule in pursuance of Section 54 of Act 85 of 1888, but he founds his right to proceed against the insurance company on Section 27 of that act. The former directs the collector’s method of procedure in the collection of taxes in a certain contingency, i. a., against property so situated that he “ can not lay hands upon it;” and the latter directs the method of assessing companies and corporations. Hence, it is the former alone that must be considered now.
The right of the Tax Collector to thus proceed by rule was questioned and decided in State vs. Meyer, 42 An. 486. In that case the same question of unconstitutionality was raised and decided adversely to the contention of the present defendant. In the course of that well considered opinion wo said:
“The legislative department has determined that such is not and could not be the meaning of the Constitution. While adhering to the constitutional method of collecting taxes without suit and by direct expropriation of property, it has provided this as an appropriate remedy to enable the collector to reach the property in order that he may exercise the right and perform the duty conferred and imposed by the Constitution and laws of the State.”
In the immediately succeeding case of Meyer vs. Tax Collector, 42 An. 441, a similar exposition was given of the section of the statute under consideration, the court expressing its opinion in the following terse and well-chosen words, viz; “We understand the General Assembly as meaning and as saying in these acts, that the proceeding directed by the Constitution is the first, the essential and the exclusive one to be pursued in the collection of taxes, so long as it is possible or practicable to pursue it; but that, if the debtor, by his act, has made it impossible for the State to reach the property assessed, as by concealing it, he is not by such means to escape the payment of his taxes, and practically to nullify the fundamental requirements of the Constitution — ‘ that taxation shall be equal and uniform,’ and that ‘ all property shall be taxed,’ which necessarily mean that taxes shall be paid; and when he has thus placed it out of the power of the Tax *1177 Collector to collect his taxes in the mode required, he can not take advantage of his own wrong; and the Legislature may provide other means to enforce their payment. (Italics ours.)
In our opinions, we correctly held that, “under exceptional circumstances, the Legislature had constitutional power to provide other means to enforce the-payment ” of taxes, and properly held that the method of procedure directed in Section 64 j of Act 85 of 1888, is constitutional and valid.
II.
The sole ground on which the defendant charges nullity of the assessment is that there was no pro rata deduction made thereon of the value of certain State and city bonds; and that if such deduction had been made there would have been no assessment at all, against the defendant’s share holders.
The record shows, as matter of fact, that the aggregate assessment of the shares of stock of the insurance company was $458,126.08, from which was deducted the value of certain real estate and other property of the corporation, whereby it was reduced to $445,520. It further shows that at date of assessment the corporation owned bonds of the State of Louisiana and of the Oity of New Orleans of the par value of $444,120, and of the market value of $458,124.08, the latter valuation being the exact amount of the assessment. Hence, if the defendant’s contention be correct, there could have been no valid assessment at all.
The question, therefore, is whether State and city bonds constitute and are entitled to be considered as “exempt property” in the sense of Section 27 of Act 85 of 1888.
This question was examined and exhaustively considered in Bank of Shreveport vs. Board of Reviewers, 41 An. 181, and decided adversely to the contention of the defendant. That was a suit by a national bank to compel the Board of Reviewers to reduce its assessment, because it had not deducted therefrom the par value of certain securities which the bank alleged to be exempt from taxation, and which consisted of certain United States and State bonds.
We can not add to the force of the argument or to the perspicuity of the reasoning displayed in the opinions expressed in the decision rendered in that case, and we will rest contented after citing a few pertinent paragraphs therefrom. Among other things we said: ■“The1 conclusion is therefore unavoidable, that the words,” i. e., all *1178 exempt property mentioned in the state, “mean all exempt property which does not form part of the capital of a bank represented by shares; and that it is a matter of no significance whether the capital was or not invested, or how it was invested, as the assessment complained of is neither of the bonds nor of the capital, but simply of the shares -by which that capital is represented.
“It is, nevertheless, insisted that the State bonds, in which part of the capital has been invested, are exempt from taxation by State authority, and that the amount invested in them should be deducted from the assessment of the shares. * * * Granting that State bonds are as much exempt as United States bonds, when not constituting in whole or in part the capital of a banking institution represented by shares, it is evident that when they constitute to any extent such capital, the shares which represent capital may be assessed at their market valu,e, without any deduction from the assessment, of the value of such bonds.
“Hence, it follows that neither the United States bonds nor the State bonds, in which the capital of the bank was invested, had to be deducted from the assessment put upon the shares.” (Italics ours.)
We said further: “It must be noted that nothing in that section, or in the entire act, indicates the slightest intention to subject either of these ceeurities to taxation, or even to provide for their exemption. The lawmaker knew full well that both subjects were beyond his reach. He knew that, under the paramount law of the land, United States bonds were not taxable; and that, under the decision of this court in State ex rel. Da Ponte vs. Board, 35 An. 657, State bonds were entitled to the same immunity.
“ What then did he mean to refer to ? ' The question is answered in the first section of the act, which levies a tax on the assessed valuation of all property situated within the State of Louisiana, except such as is expressly exempted from taxation by the Constitution.
“ Turning to Article 207 of the Constitution, which is the law of exemptions, it appears that these securities are not' therein enumerated ; hence, it follows that they are not in terms, or expressly exempted from taxation by the Constitution. It is, therefore, clear that they were not within the contemplation of the law giver, in the section under discussion, as an element of deduction from the par value of shares of stock in banks. To allow the deduction directed in this section was a pure gratuity on the part of the State. The *1179 Legislature had the undoubted power to simply assess the shares in banks, without reference to the property which might be owned by the banks, and which was actually assessed in their names, or which might be exsmpt under the Constitution. * By the very terms of the statute the capital itself is not taxed; hence, the securities which may represent it in the vaults of the bank are not taxed either. The true meaning of the statute, .as applied to this case, is to determine the taxable value of the shares by deducting such parts of the capita] stock of the bank as may be invested in property which is exempt from taxation by the Constitution.”
In our opinion, rendered on the application for a rehearing, the following is quoted from Mercantile Bank vs. New York, 121 U. S. 145, viz:
“ The tax on the shares is not a tax on the capital of the bank. The corporation is the legal owner of all the property of the bank, real and personal. * * * The interest of the share holder is a distinct, independent interest or property, held by the share holder, like any other property that may belong to him, and, of course, is-subject to taxation.”
Applying the principles announced in that ease, we said:
■ “ State bonds fall under the control of the same principles. It would be impossible to formulate any theory under which an exemption would attach to the shares, because the capital of the bank was invested in State bonds, which would not apply, in case the investment was in United States bonds.”
In Home Insurance Company vs. Board of Assessors, recently decided, 42 An. —, the same principles were announced, and Bank vs. Assessors was affirmed.
The views which were there so carefully and considerately expressed, we still adhere to and maintain; and they are perfectly conclusive against this contention of the defendant.
III.
But it is contended that if the claimed deduction is not made, then the section under consideration contravenes the 203d Article of the Constitution, which contains the equality and uniformity clause; defendant’s contention being that such a construction of the statute; results in a discrimination against corporations in favor of moneyed! capital in the hands of individuals who are employed in making loans *1180 on interest, as corporations are; and, as an illustration of such discrimination, the national banks are cited as coming in competition with the defendant.
The cited article declares that “ taxation shall be equal and uniform throughout the territorial limits of the authority levying the tax;” but we can perceive no inequality or want of uniformity in the taxation provided in Section 27 of Act 85 of 1888, for it declares ‘ ‘that no assessment shall hereafter be made under that name as the capital stock of any national bank, State bank, banking company, banking firm, or banking association; or of any corporation, company, firm or association whose capital stock is represented by shares; but the actual shares shall be assessed to the share holders who appear as such upon the books, regardless of any transfer not registered or entered upon the books,” etc.
National banks, .State banks, and all other banking firms, are placed upon a plane of perfect equality, and in that respect the statute is in perfect accord with the constitutional precept quoted. This section does not treat of individuals. They are treated of in Section 1 of that act; and it declares that “all rights, credits, bonds, stocks and securities of all kinds; promissory notes, open accounts, and other obligations; all cash on hand, * including cheeks payable on that day; * * * also all borrowed money or deposits in banks, or elsewhere. * * * All coins, United States and foreign, whether current or uncurrent; all currencies, bank notes, and other paper moneys; all moneys loaned at interest, all shares of stock in all banking, insurance, manufacturing and all other incorporated or non-incorporated companies chartered under the laws of Louisiana, or under the laws of any other State than Louisiana; and all other articles and things whatever possessing any money value”— are in terms subjected to annual ad valorem taxation. (Italics ours.)
It is difficult to perceive the foundation for the complaint of discrimination for want of uniformity or equality in the taxation provided for in the statute.
We think this charge is wholly groundless.
IV.
'The last ground of complaint is that if Section 27 of Act 85 of 1888 .contemplates and requires that the value of the defendant’s bonds shall not be deducted from the assessment of the shares of the *1181 defendant’s stock, then it is in contravention oí Article 1, Section 10, of the Constitution of the United States, same being an impairment of protected contracts, because the non-deduction of said exempt property from said assessment is, in .effect, an indirect taxation of the bonds themselves; and that it is just as much a violation of the Constitution as direct taxation is.
To establish this proposition, it is incumbent on the defendant to show that this failure to deduct the value of the State and city bonds of the corporation is, in effect, a tax upon them.
In the Bank case above cited, it was held that exempt property was such as did not form a part of the capital stock of the bank; that it was matter of no consequence how the capital stock of a corporation was invested, as the assessment was not of the- bonds or the capital, but simply of the shares of stock by which the capital was represented. It was held, that by the very terms of the statute the capital of a corporation is not taxed “ under that name,” and therefore the securities which may be in the vaults of the bank are not taxed.
In the case of Mercantile Bank vs. New York, 121 U. S. 145, the Supreme Court held that a tax on the shares of a bank is not a tax on the capital of the bank. That the corporation is the owner of all the property of the bank; and that the interest of the share holder is a distinct, independent interest or property held b3* the share holder, like any other property that belongs to him, and that it can be taxed.
It appears to us that those decisions are a full and complete answer to this contention of defendant. The failure to deduct the value of exempt bonds is not taxation of them directly or indirectly. The tax laid upon shares of stock in a corporation is a tax on the specific thing, and without reference to the values of the corporation, which are not specifically exempt under the letter of the Constitution. The value of its shares of stock does not depend upon the corporation’s ownership of exempt bonds. Its values could, with equal propriety, be invested in anything else equally valuable, without diminishing the market value of its shares of stock; hence, they have-an assessable valuable per se, and independent of the character of the values owned by the corporation. It follows as a logical and legal sequence that the legality of the assessment of shares of stock of a corporation does not depend upon a deduction being made of State *1182 and city bonds, held and owned by the corporation; and, therefore, the statute does nob violate the contract clause of the United States Constitution, nor impair the obligation of defendant’s protected contracts.
Y.
Having disposed of the constitutional questions involved in this case, we must- determine whether the Tax Collector can, by the mode of procedure herein adopted, reach the shares of stock of the defendant corporation, and subject them to the payment of the taxes assessed against them, or in default thereof, coerce their pay ment by the corporation.
The judge below held, as we have done, on the constitutional questions involved, but decided that it was impossible to make the rule absolute, “ for the reason that the defendant company has not that possession or control of the property which the mover asks to have ‘ delivered,’ which should be necessary, in order to enable it to comply with such a judgment.
“ It will be observed,” says the judge, ‘ ‘that the property assessed is the right of the share holders to participate in the property earned by the defendant corporation; and to divide among themselves the residue of the property left after the liquidation of the corporation, and the payment df its debts.
“ The evidences of this right,” says he, “ consisting of the stock certificates, are shown to be in the hands of the stock holders.
“What, then, has the defendant company in its possession or under its control, answering the description contained in the rule, which it could deliver to the plaintiff to be sold ? ”
This view is maintained in the brief of defendant’s counsel, on the ground that “in so far as the possession of -the stock is concerned, as well might it be said (that) the maker of a note is in possession of the debt evidenced by the note, merely because he owes it, as to say that the (corporation) is in possession of bhe shares of the stock, merely because it occupies a certain trust and quasi debtor relation to its share holder. Stock in a corporation, like all incorporeal rights, is supposed to follow the person of the owner, although we do not dispute the proposition that the stock may be given a situs, for the purpose of taxation, if the State deems it proper to do so; but the nature of the property is such that it can *1183 not possibly be viewed as being in the possession of the corporation wherever it may be located.” Brief, p. 9, et seq.
Of course it can not be correctly said that the maker of a promissory note is in possession of the debt evidenced by it, but it is a nonsequiter that the corporation is not the possessor of “ the right of the share holders ” which is evidenced by the certificates issued to them. For a promissory note is payable to bearer or order, and passes from hand to hand, by indorsement or manual delivery, at the option of the holder. It is controlled^ in its operations in market overt, by the principles of the law merchant. But shares of stock possess inherently only a restricted negotiability, and transfers of them can be effected only by assignment of them, as of other credits, or incorporeal rights. R. C. C., 2642, et seq.
To effectuate such a transfer, notice to the corporation is of the essence of it; and the only evidence of it is the appropriate entry thereof on the stock books of the corporation, which are kept for that purpose.
The law requires that every corporation in its charter shall fix the place of its domicil. R. S., Secs. 685, 740. That the property of a corporation “shall be assessed in the parish where the principal office or place for transacting the financial concerns of the company shall be,” etc. R. S., Sec. 734.
Thus, the situs of a corporation is fixed at the place where its financial transactions are conducted, and, necessarily, the stock holder quoad his shares of stock can have no other. But the converse of that’doctrine is true of a promissory note, for we have decided that ordinary “debts have their situs at the domicil of the creditor. Meyer vs. Pleasant, 41 An. 645; Barber Asphalt Paving Co. vs. City, 41 An. 1015.
The Legislature was evidently mindful of these provisions of law, and intended to conform the revenue law of 1888 to them, for the act says “that no assessment shall be hereafter made under that name as the capital stock of any national bank, etc., * * * but the actual shares shall be assessed to the share holders who appear as such upon the books, regardless of any transfer not registered or entered upon the books; and it shall be the duty of the president, or other officer, to furnish to the Assessor a complete list of those who are borne upon the books as share holders; and all taxes so assessed shall be paid by the bank, etc., * * * which shall be entitled to collect *1184 the amounts from the share holders or their transferees. * * * Such assessment shall be made where the bank is located, and not elsewhere, whether the share holders reside there or not," etc. Sec. 27 of Act 85 of 1888. (Italics are ours.)
From the text of the statute it is perfectly manifest that, first, it is “the actual shares which shall be assessed to the share holders; second, that the shares which are to be assessed are those of the stockholders who appear as such upon the books” of the corporation, “regardless of any transfer not registered upon the books” of the corporation; and, third, that the assessment of the shares is to be made upon “the list of those who are borne upon the books as share holders,” and which is furnished by the president, or other officer of the corporation, who is charged with the performance of that duty.
In this manner the assessment against the defendant’s share holders was made, and the manner of making the assessment is not complained of. In this respect it is unquestioned. The question therefore to be answered is: If the corporation has sufficient possession of the shares, notwithstanding the certificates evidencing the ownership of the respective share holders was not in its keeping or actual custody, to enable the Assessor to make a valid assessment of them at the situs of the corporation, is not that possession sufficient-to enable the Tax Collector to effect a valid seizure of them in the same manner?
• We think the legislative enactment has answered this question in. the affirmative, and that it was competent for it to do so. For if,, after the assessment had been thus made, no transfer of -the shares of stock can affect it prejudicially, how could such transfer affect a sale of it? Manifestly it could not.
It is a well recognized canon of construction that credits, incorporeal rights and things which are not susceptible of corporeal tradition, may be seized in the hands of the custodians thereof, if the instrument evidencing the debt or right be not negotiable.
This principle was applied in an early case, Harris vs. Bank of Mobile, 5 An. 588, to the precise question in hand, the court maintaining a seizure under fi. fa. of certain shares of stock of the defendant corporations. The court said:
“The shares in the corporations were the property to be seized,, being an undivided interest in their funds and assets. The officers *1185 of the corporations were the keepers and possessors of this undivided property for each and all the stock holders. The certificates of stock were the evidence of the ownership of that property in the hands of the holders, as the subscription and transfer books were the evidence of the ownership in the possession of the corporations; and the shares of the defendant,' E. B. Harris, incorporeal rights in the funds and assets of the corporations, in the possession of their officers. C. C. 466.
“The 647th Article of the Code-of Practice authorized the seizure of these rights. They might have been seized by taking possession of the certificates, as we infer from Article 2457 of the (Civil) Code, which declares that the tradition of incorporeal rights takes place by the delivery of the titles. But they might also be seized in the same manner as the share in a private partnership under Article 2794 of the Code, by seizing the interest of the partner in the assets, and notifying the firm.
“We think, therefore, that it was a valid seizure of the plaintiff’s stock, for the sheriff to declare to the cashier or keeper of the funds and assets of the corporation, that, by virtue of the execution in his hands, he seized the undivided interest of the defendant in the funds and assets of the corporations; or, what was the same thing, his shares of stock. This the sheriff did, and left a copy of the notice in the hands of the cashier of the bank, and secretary of the insurance company, and requested them to enter the seizure on the transfer book of the company.
“The counsel of the plaintiff,” so the court says, “contends that this was not a valid seizure of the stocks, because the sheriff did not take into his possession the certificates of the stocks then pledged to the Louisiana State Bank for a loan, and in possession of that corporation.” In reply the court said, after reviewing the various authorities cited by plaintiff’s counsel: “The .inability to seize the corporeal evidence of the right does not prevent the creditor from seizing the right itself by notifying the keeper of the subject matter of the right.
“ If the evidence of the right be negotiable, and is acquired without notice by an endorsee, even after seizure of the right, the seizure is ineffectual as to him; a principle adopted in favor of commerce. But if the evidence of the right be -raora-negotiable, the seizure of the debt or right of which it is the evidence, by notification to *1186 the debtor or keeper of the subject of this right, is valid against the subsequent assignee of the debt or right.
“ The certificates of the stocks in controversy were not negotiable, and could not be sold to the prejudice of the previous seizure of the stocks themselves. We conclude therefore that the seizure by the sheriff * * * was a valid seizure.”
We have examined C. P. 647 and R. C. O. 474, 2794, 2481 and 2828, as well as the decisions referred to in the opinion of the court, and consider that the court placed a correct interpretation upon them. Vide Cucullu vs. Insurance Company, 2 R. 571, and Brode vs. Insurance Company, 8 R. 244, as corroborative of the opinion quoted from.
It seems-clear to our minds that “the right” of a stock holder may be thus seized by the Tax Collector; that the plaintiff’s method of procedure is a legal and proper one; and that it is the obligation and duty of the defendant corporation to pay the taxes assessed against its share holders, or to submit to the Tax Collector the necessary list of stock holders, to enable him to make a seizure and sale of their shares of stock.
The judgment is erroneous, and must be reversed. It is therefore ordered and decreed that the judgment appealed from be reversed; and it is further ordered that plaintiff’s rule be made absolute, at the cost of defendant in both courts.