## NATIONAL BANK OF BALTIMORE v. MAYOR, ETC., OF BALTIMORE et al.

### (Circuit Court, D. Maryland. March 10, 1899.)

NATIONAL BANKS—TAXATION—DISCRIMINATION.

   The fact that evidences of debt and shares of stock in foreign corporations, owned by residents of Maryland, cannot be taxed for county and city purposes at a greater rate than 30 cents per $100 of actual market value, as provided by Act Md. 1896, c. 143, § 201, does not constitute an

illegal discrimination against national banks, the shares of which might be taxed at a higher rate, within Rev. St. § 5219, prohibiting the taxation of national banks at a greater rate than is assessed on other moneyed capital in the hands of individual citizens of a state, in the absence of proof that the securities taxed at a less rate belonged to a class of investments which directly compete with the business of national banks.

Bernard Carter, Willis & Homer, and George R. Gaither, for complainant.

John V. L. Findlay and Leon E. Greenbaum, for defendants.

MORRIS, District Judge. This is a bill in equity praying an injunction to restrain the tax collector of the city of Baltimore from collecting from the complainant, the National Bank of Baltimore, as the city tax on the shares of its stock owned by residents of Baltimore, any sum in excess of 30 cents on the $100 of the market value, as ascertained by the state tax commissioner, which amount the complainant offers to pay. The tax demanded by the city collector is for the year 1897, and is at the rate fixed by the mayor and city council of Baltimore as the rate required for its general municipal purposes, viz. at the rate of $2 in every $100 of the assessed value of the shares belonging to residents of the city. This tax is assessed and demanded, in respect of shares of complainant's stock, by virtue of a portion of section 2 of chapter 120 of the Laws of Maryland of 1896, by which it is enacted:

"That all shares or interest in any joint stock company and all shares of stock in any bank incorporated under the laws of Maryland, and all shares of stock in any national bank located in Maryland, and all shares of any corporation incorporated under the laws of Maryland are to be valued and assessed for the purpose of state, county and municipal taxation to the owner thereof in the county or city in this state in which said owners may respectively reside and the taxable value of such shares is to be ascertained and determined and taxes thereon levied and collected as is now or may be hereafter provided by law."

It is not complained that there is any discrimination either in the valuation or taxation of the shares of the complainant, or of any of the national banks located in Maryland, as compared with state banks, or as compared with other corporations of any kind incorporated under the laws of Maryland; but the complainant's contention is that there is a discrimination between the rate of tax imposed upon national bank shares, as compared with the rate of tax on bonds, certificates of indebtedness, and evidences of debt, in whatsoever form, and upon all shares of stock in foreign companies owned by residents of Maryland, as to which class of property section 201 of chapter 143 of the act of 1896 provides that they shall be assessed and valued to the owners thereof at their actual market value, and that upon that valuation there shall be paid the regular rate of taxation for state purposes, but for county or city taxation there shall be paid only at the rate of 30 cents on each $100, and no more. The contention of the complainant is that the bonds, certificates of indebtedness, and evidences of debt which are thus taxed at 30 cents on the $100 are the securities in which it deals, and in which it invests its capital, and that there are private bankers and other citizens of Maryland who

have moneyed capital which they employ in the same general business as national banks, and who are taxed only on the securities in which their capital is invested; and that so far as their capital is invested in evidences of debt, which, under section 201, are taxed only at 30 cents on the $100, there results a discrimination, because the shares of the capital stock of the national banks are taxed for the year 1897, in the city of Baltimore, at the rate of $2 on each $100 of their market value.

The act of congress which allows taxation of national bank shares is section 5219 of the Revised Statutes:

"Sec. 5219. Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located; but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by non-residents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed."

There is no contention that the Maryland act of 1896 contains any intentional discrimination against national banks, or was enacted in any spirit of hostility towards them; but it is contended that the working of the law is such that, as evidences of debt are taxed at a less rate than the shares of national bank stock, persons who are not incorporated, and therefore have no fixed and declared capital, are taxed only on the evidences of debt which they own at the time of assessment, and therefore escape at a less rate than the capital of national banks. It is not denied by the complainant that the great competitors of the banks in loaning money and dealing in evidences of debt are the trust companies, and similar corporations, which, if incorporated in Maryland, all pay the full rate on the value of their shares; but it is alleged that the capital of private and unincorporated bankers is moneyed capital sufficient in amount, in the city of Baltimore, to result in a material discrimination. The burden of supporting this contention is upon the complainant, and requires it to show, not only that the moneyed capital so competing with the capital represented by the shares of the national banks is a sum sufficient to constitute a discrimination material in its amount, but also that it is a discrimination which it is reasonably certain could be avoided by a different tax law. If the clause of section 2 of chapter 120 of the Maryland act of 1896 imposing the full rate of tax on the shares of all corporations had contained the words, "and all moneyed capital of unincorporated citizens of Maryland used by them in the same general business as that carried on by national banks in Maryland," and the tax collectors made a bona fide effort to enforce that clause of the law, there could be no ground for this bill of complaint. If a banker with $200 of his capital buys $10,000 worth of bonds, and carries them with the aid of loans from banks or trust companies, it is the $200 of

moneyed capital that comes into competition with the moneyed capital represented by the shares of a national bank, and not the $10,000 of bonds; or if a banker buys commercial paper, and with his indorsement rediscounts with a bank, it is not his moneyed capital, but the bank's capital, or its deposits, which he is using. So it may be true that the private bankers of a city are doing a large volume of business, and at the same time it may be true that the moneyed capital of their own which they are using is insignificant. There is in the testimony no evidence of the amount of capital employed by these private bankers of Maryland in their business. A witness for the complainant states that, in his judgment, it would, in the aggregate, exceed $10,000,000; but this is confessedly only a guess, based largely upon the rating given to the banking firms of Baltimore city by the reports of the mercantile agencies. These reports, as is well known, are based upon approximations of the whole wealth of all the partners of the firm, as in law all their property is at the risk of their business. The bankers themselves who were examined by the complainant were not interrogated as to the capital invested in the banking business carried on by them. One testified that his firm returned to the tax assessors the capital used in their business, and paid the full tax rate upon it; and the tax collector testified that other banking firms did the same. One of the bankers examined by the complainant stated that his firm returned to the assessor the stocks and bonds in which their money was invested at the date of the return; that much of it was the stock of domestic corporations, on which the corporation had paid the full tax, so that it was not subject to tax in their hands, and, as to the bonds, they paid the 30-cent rate; that the stocks and bonds often amounted to many times their capital, because, as they did hardly any discount business, they invested their deposits in stocks and bonds; that the only way in which they competed with banks was by offering interest to depositors, so as to attract deposits, which they then invested in stocks and bonds; that, if the securities in which they invested their deposits were taxed at the $2 rate, there would be nothing left for them, but that at the 30-cent rate bankers who held securities did return them to the assessor. It is to be remembered that banks do not return their deposits at all, which aggregate often two and three times the amount of the capital; so that as to deposits, so far as they are represented by 30-cent securities, on which the tax is paid by private bankers, the banks have the advantage. The proof fails to show to my mind that the capital used by private bankers is of such amount that, if returned for taxation, it would relieve the banks from any material disadvantage, or that under any law any considerable amount would ever be placed upon the tax lists. The tax collector testified that after examining several bankers, and taking their affidavits, he was satisfied that they were paying on their capital at the regular city rate, and ceased further investigation, because he was satisfied that their assessments were correct.

There are two ways in which the banks can be injured by discrimination in taxation: One is that, if other moneyed capital escapes taxation, the rate imposed upon all the assessed capital is greater; and the other is that if other moneyed capital used in busi-

ness, which competes with theirs, escapes taxation, it can make a profit, even if loaned out at a less rate than the banks can afford to loan. As to the first ground, the proof shows that when bonds, evidences of debt, and stocks in foreign corporations, under the law as it stood prior to 1896, were taxed at the full rate, there was only, in the city of Baltimore, a little over $6,000,000 of such property on the tax lists for taxation, while under the present law, under the 30-cent rate, there was assessed for taxation nearly $59,000,000. The collection of revenue by taxation is a practical problem, and it would be very unwise for courts to ignore practical results in the search for a theoretical uniformity. It was because of the persistent complaint, prior to 1896, that there must be a large amount of securities which the assessors had failed to get upon the tax lists, and the patent fact that, if the tax on a 4 per cent. bond amounted to more than half the interest, the capital it represented must, if ever actually taxed at the full rate, be driven from the city, to some place where the law was less exacting, that the legislature was led to the enactment of section 201 of chapter 143 of the Laws of 1896. This law was the result of years of discussion, and of most serious political struggles, and of the final acceptance by the legislature of the wise suggestions of men of the largest experience in business affairs and finance. It cannot be said, in the light of the experience of prior years, that if the full tax was imposed upon all bonds, certificates of indebtedness, or evidences of debt, the basis of assessment would be nearly as great as it is now, or that the rate of taxation would be less. Moreover, the discrimination forbidden by section 5219, as construed by the supreme court, does not have reference to the rate of taxation upon the holders of evidences of loans and securities, if these securities belong to a class of investments which does not compete with the business of national banks. First Nat. Bank of Aberdeen v. Chehalis Co., 166 U. S. 440–461, 17 Sup. Ct. 629. The bonds, certificates of indebtedness, and evidences of debt, which, under section 201 of chapter 143 of the Laws of 1896, are taxed at the 30-cent rate, if issued by corporations of Maryland, represent the debts of corporations the owners of whose shares are taxed the full rate upon the value of their shares, and so the full rate is paid upon all the property of the corporation, and, if issued by individuals, residents in Maryland, they represent the debts of persons who are taxable upon the full value of their real and personal property, without deduction for their debts; and presumably the same is true of corporations and individuals foreign to Maryland. So that all that class of property consisting of evidences of debt might be exempt from taxation upon the ground of double taxation, and upon other grounds upon which it has been held that mere evidences of debt may fairly be exempt. It is only moneyed capital, employed, by the persons to whom it belongs, in the business of discounting commercial paper, making loans on collateral security, buying and selling bills of exchange, negotiating loans, and dealing in securities, and the like operations of the business of banking, which comes in competition with the moneyed capital invested in national banks. As was said by Mr. Justice Matthews:

"Corporations and individuals carrying on these operations do come into competition with the national banks, and capital in the hands of individuals

thus employed is what is intended to be described by the act of congress." Mercantile Bank v. City of New York, 121 U. S. 138–156, 7 Sup. Ct. 826.

The capital so employed is shown by the defendant to have been, with respect to some of the bankers in Baltimore city, assessed and taxed at the full rate. That it is not so with all is not through a defect in the law, or intentional discrimination of the assessors or collectors, but from the inherent difficulties of ascertaining it. The final clause of section 2 of chapter 120 of the Laws of 1896, taxing "all other property of every kind, nature and description within this state," is held by the taxing officers to include the banking capital of private bankers.

In the very instructive arguments of the able counsel many points on both sides of this controversy were elaborately and learnedly presented, which it does not seem necessary should be now reviewed in this opinion. The contention that the shares of foreign state banks and other foreign corporations held by citizens of Maryland is moneyed capital, which comes in competition with national banks in Maryland, cannot be maintained, and it would be no illegal discrimination if the public policy of the state was to levy no tax at all upon them. Without attempting to extend this opinion to embrace all the points raised in argument or by the pleadings, I hold that the defendants' demurrer to the seventeenth paragraph of the bill must be sustained, and that the complainant is not entitled to the relief asked by its bill.