MECHANICS NATIONAL BANK OF TRENTON v. CHARLES H. BAKER, RECEIVER OF TAXES FOR THE CITY OF TRENTON, ET AL.

Submitted March 20, 1900—Decided June 11, 1900.

1. Under the statutes of this state, the tax levied on account of the shares of stock in national banks held by non-residents, is not imposed upon the banks; it is imposed upon the shares, being

assessed in form only to the banks, which are required to pay the tax only out of dividends declared on the stock; and these statutes are in accord with the act of congress permitting the state to tax such shares.

2. Whether, under our law for the taxation of national bank stock, that stock is assessed at a greater rate than other moneyed capital in the hands of individual citizens of the state, in violation of the act of congress permitting the states to tax such stock, is a question of fact to be decided in each case by the evidence respecting the taxes assessed in the particular district wherein the stock is taxed; and in all cases where discrimination against national bank stock appears, our laws afford ample remedy by application to the commissioners of appeal and the state board of taxation, and by *certiorari* to this court.

3. Our statutes for the taxation of shares of stock in banks do not violate that provision of the state constitution which requires property to be assessed for taxes under general laws and by uniform rules.

4. In ascertaining the true value of the shares of bank stock for the purpose of taxation, our laws do not require that the non-taxable property of the banks should be deducted from their assets.

5. Section 34 of the Bank act of March 24th, 1899, by exempting from taxation all the real and personal property of banks, has done away with the reason of the decision in *Orange National Bank* v. *Orange*, 29 *Vroom* 45, to the effect that the value of their real estate should not be computed in estimating the assessable value of their stock held by individuals.

On *certiorari* in matter of taxation.

Before Justices DIXON, LUDLOW and COLLINS.

For the prosecutor, *William M. Lanning.*

For the defendants, *John Rellstab.*

The opinion of the court was delivered by

DIXON, J.   This *certiorari* brings up an assessment against the prosecutor for the tax on one thousand four hundred and sixteen shares of its capital stock owned or held by persons non-resident within this state, which were valued at $83.86 per share and taxed at $2.15 per hundred, the tax amounting to $2,553.02.

The first objection urged against the assessment is that the federal law (*U. S. Rev. Stat.,* § 5219), on which the right of the states to tax national banks depends, permits such institutions to be taxed only on their real estate, and hence, it is contended, the taxation of the bank for shares of stock is unauthorized.

If this assessment be really a tax levied upon the bank, this objection must prevail, but I think it is not such.

The federal law declares that "the legislature of each state may determine and direct the *manner and place* of taxing all the shares of national banking associations located within the state," provided that the shares owned by non-residents of a state shall be taxed only at the place where the bank is located; and the true construction of our statutes will indicate that this is the power which the legislature of this state has exercised.

Our Tax act of April 11th, 1866 (*Pamph. L., p.* 1078, § 16), provided that the stock of every bank established under the acts of congress and of every state bank should be assessed in the township or ward wherein the bank was located, to all stockholders thereof, and it should be the duty of each of the banks to retain and pay the amount of the tax assessed to each stockholder out of the dividends from time to time declared, and that the tax should be a lien on each stockholder's shares, for which the shares might be sold by virtue of a tax warrant, as directed in other cases.

This scheme accords with the federal law, the requirement, that the bank shall pay the tax out of dividends due to the owner of the stock being consistent with the purpose of that law as declared by the Supreme Court of the United States in *National Bank* v. *Commonwealth,* 9 *Wall.* 353, and *First National Bank of Aberdeen* v. *County of Chebalis,* 166 *U. S.* 440.

Our later act, passed April 1st, 1869 (*Pamph. L., p.* 1149), modifies this scheme. It enacts that "every person shall be assessed in the township or ward where he resides for all shares of the stock" of any national or state bank "owned by him, or in his possession or control as trustee, guardian,

executor or administrator; and in case said owner, trustee, guardian, executor or administrator shall be a non-resident of this state, then, and in that case, such banks shall be assessed to the amount of such shares so owned or held by non-residents as aforesaid, in the manner now provided by statute in the case of other corporations."

In 11 *Vroom* 559 is a remark by Chancellor Runyon that section 16 of the act of 1866 was repealed by this act of 1869, but that remark was *obiter* and is not absolutely correct. The repealing force of the act of 1869 extends only so far as it was inconsistent with prior laws, and only so far as it was itself valid. It was expressly repugnant to the act of 1866 in two respects—first, in changing *the place* where the shares of resident stockholders should be assessed from the place where the bank was located to the place where the stockholder resided, and second, in changing *the manner* of assessing the shares of non-resident stockholders by substituting an assessment to the bank generally for an assessment to each stockholder. The repugnancy in the respect first mentioned gave rise to an implied repeal of so much of the act of 1866 as required the bank to pay the tax of resident stockholders out of their dividends, for such taxes would be collected at the place of the stockholder's residence, and not necessarily where the bank was located. But with regard to the shares of non-resident stockholders, no provision of the act of 1866 was disturbed, except that requiring the assessor to make a separate assessment to each stockholder, in lieu of which the assessor was to make a single assessment to the bank for all shares held by non-residents, leaving the bank, when it had paid the tax out of the dividends declared, to charge against each non-resident shareholder his due proportion. Such, in effect, was the construction put on the act of 1869 by this court in *North Ward National Bank* v. *Newark,* 10 *Vroom* 380, and, so far as it related to the shares of non-residents, the judgment of this court was affirmed by the Court of Errors. *S. C.,* 11 *Id.* 558, 562.

If the act of 1869, or the act of 1899 (*Pamph. L., p.* 431,

§ 34), which has now taken its place, was intended to author-ize a real tax upon the bank, instead of a tax upon the shares, payable by the bank out of dividends, that intention could not be carried out, for it would contravene the higher law of con-gress (*Owensboro National Bank* v. *City of Owensboro,* 173 *U. S.* 664), and, in that respect, the act would be invalid and incapable of repealing the valid provisions of the act of 1866; and if, in compliance with the act of 1869, or of 1899, the present tax has been illegally assessed, it is our duty, under the act of March 23d, 1881 (*Gen. Stat., p.* 3404), to amend the error and to sustain the tax, in such form as the act of congress permits and the act of 1866 prescribes.

This objection cannot prevail.

The second objection is that the statutes violate that provi-sion of the New Jersey constitution which requires property to be assessed for taxes under general laws and by uniform rules, in that they provide one method of assessment for shares of resident stockholders and another for those of non-residents. But our laws do not make any substantial differ-ence in the taxation of these shares, and, for difference in form of assessment, the difference of conditions affords suffi-cient justification. For such a purpose the shares of residents and those of non-residents may be placed in distinct classes, and the laws and rules applicable to each class would still be general and uniform.

The same constitutional provision is claimed to be violated because bank stock is assessed and taxed differently from moneyed capital otherwise invested and employed, as, for example, stock in trust companies.

But in *State Board of Assessors* v. *Central Railroad Co.,* 19 *Vroom* 146, it was held that this constitutional injunction did not forbid the classification of property for purposes of taxa-tion, and that the use to which property was put formed a legitimate basis for classification. Although the object for which trust companies may be organized resembles in some features that for which banks are incorporated, yet these objects are not identical, and the differences permit the exer-

cise of legislative discretion in classifying them as distinct. It would not, I presume, be contended that the act concerning trust companies (*Pamph. L.* 1899, *p.* 450), is in its entirety unconstitutional; yet its permeating design is to confer corporate powers, which cannot, constitutionally, be done by special act, but only through general laws. *N. J. Const., art.* 4, *sec.* 7, *par.* 11. If this act is general, then the corporations formed under it stand in a class by themselves, and may be taxed differently from other corporations. On the same principle, stock in the various classes of corporations may be differently assessed for taxes, in the discretion of the legislature.

The fourth objection rests upon the proviso in section 5219 of the federal statutes, which declares that the taxes to be levied on national bank stock, under state laws, shall not be assessed at a greater rate than upon other moneyed capital in the hands of individuals of such state. The prosecutor claims that its stock is assessed at a greater rate than the stock in trust companies.

The best exposition, I think, of the proviso just mentioned is to be found in the opinion of Mr. Justice Matthews in *Mercantile Bank* v. *New York,* 121 *U. S.* 138. It is to the effect that the clause only forbids unfriendly discrimination against national banks in favor of other moneyed capital, in the hands of individual citizens, which is employed in business competing with national banks. Shares of stock in railroad companies, insurance companies, &c., state or municipal bonds, even deposits in savings banks, although in a fair sense they are moneyed capital in the hands of individuals, are not within the purview of this statute, because there is no competition between such capital and that invested in the stock of national banks. But shares in state banks and in trust companies organized under the New York statute, and capital employed in private banking, were deemed to be within the proviso, because of the competitive nature of the business. See, also, *First National Bank of Wellington* v. *Chapman,* 173 *Id.* 205.

Trust companies formed under the statutes of this state are also, to some extent, competitors of national banks; and therefore if, under our laws, taxes be assessed against the shares of stock in national banks at a greater rate than that imposed upon the moneyed capital represented by the shares of stock in trust companies, the act of congress is violated.

The shares of stock in national banks are to be assessed at their true value (*Stratton* v. *Collins,* 14 *Vroom* 562), but each resident shareholder is entitled to deduct therefrom the amount of debts owed by him to resident creditors. *North Ward National Bank* v. *Newark,* 11 *Id.* 558, 561. The shares of stock in state banks and the capital of private bankers must be taxed in the same manner.

The act concerning trust companies (*Pamph. L.* 1899, *p.* 450, § 29) declares that every trust company shall be taxed in the taxing district where its office is situated upon the amount of its capital stock issued and outstanding, except that any real estate belonging to any such corporation shall be taxed in the taxing district where such real estate is situated, and the amount of assessment upon said real estate may be deducted from the amount of any assessment made upon the capital stock of the company.

The effect of this statute is to impose on the moneyed capital invested in trust companies the same tax as would be levied if every share, whether belonging to residents or non-residents, were assessed and taxed for the par value thereof. Whether such a tax, levied in any taxing district, is assessed at a less rate than that assessed in the same district upon bank stock, is a question of fact, to be decided by ascertaining whether in that district there is a trust company whose shares of stock are worth more than their par value. If there is, then the national bank shares assessed in that district at their true value are assessed at a greater rate than the moneyed capital invested in the trust company, the excess being denoted by the difference between the par value and the true value of the trust company stock. Thus if the trust company stock were worth $150 per hundred, the tax against

the company would represent only two-thirds of the true value of the stock, and in order to avoid that unfriendly discrimination which the act of congress prohibits, national bank stock could not there be assessed at more than two-thirds of its true value.

But the case now before us discloses no such condition. If it did, the court is fully competent to apply the remedy. Not only might the act of March 23d, 1881, already mentioned, be invoked, but also the act of March 26th, 1852 (*Gen. Stat., p.* 3390), by which the court is expressly enjoined to reduce all excessive taxes brought before it by *certiorari* to such amount as is warranted by the law which authorizes the tax, that is, in this case, by the federal statute and the state laws passed in accordance with it.

Moreover, the prosecutor, before coming to this court, might have presented its complaint on this head to the commissioners of appeal and to the state board of taxation, where ample power exists to relieve from excessive taxation.

This objection therefore fails for lack of evidence to support it.

The last objection is that the assessed valuation of the shares is too high, because in fixing it the non-taxable property of the bank, amounting to $292,000, was not deducted from its capital stock and accumulated surplus.

The force of this objection is derived from the provision in the Tax act of 1869 and the Bank act of 1899, above mentioned, directing that the banks shall be assessed to the amount of the shares owned or held by non-residents, *in the manner now provided by statute in the case of other corporations.*

The Tax act of 1862 enacted that all private corporations should be taxed at the full amount of their capital stock paid in and accumulated surplus, and the Tax act of 1866 continued the same provision for all private corporations except banking institutions. On these statutes this court held that these corporations were taxed simply as owners of property, and therefore that such of their property as was by other laws

exempt from taxation must be deducted from the capital stock paid in and accumulated surplus, leaving only the residue assessable for taxation. *Newark City Bank* v. *Assessor,* 1 *Vroom* 13; *Merchants Insurance Co.* v. *Newark,* 25 *Id.* 138.

The argument for the prosecutor is that, as banks are to be assessed for the shares of non-resident stockholders, *in the manner provided in the case of other corporations,* these decisions require that non-taxable property belonging to the bank shall be deducted from its assets in ascertaining the value of the shares of stock.

But the cases above cited are not at all parallel with that now under consideration. I have endeavored to show that our laws do not, as they cannot, impose upon national banks any tax because of the shares belonging to non-residents; they impose the tax upon the shares themselves, making the assessment in form to the banks, and employing the banks as a means of compelling payment of the tax. This in nowise resembles a tax upon a corporation for the property of which itself is the owner. Those decisions are therefore inapplicable.

It is settled that the act of congress does not require United States securities held by a national bank to be deducted from its assets in determining the value of its shares for taxation (*Van Allen* v. *Assessor,* 3 *Wall.* 573), and yet such securities are not taxable by the states as property. It is reasonable to presume that the legislature, in providing for the taxation of national bank shares, intended to exert the full power permitted by congress, and therefore did not intend such a deduction to be made. If United States securities held by the bank were not to be deducted, no valid reason appears for the deduction of other exempt property of the bank. Indeed, since the tax is levied upon the shares as property, it seems necessary, under our constitution, that the shares should be assessed according to their true value, and certainly that value is not lessened by the fact that some property of the bank is of a sort which our laws do not tax. If such a deduction had been intended by the legislature, I think some

clearer indication of the purpose would have been given than that now discoverable.

Part of the non-taxable property of the prosecutor consists of real estate, and in *Orange National Bank* v. *Orange,* 29 *Vroom* 45, this court held that, under the statutes then in force, the real estate of banks was to be taxed in the taxing district where it was situated, and therefore its value should not be computed in estimating the assessable value of the stock of the banks. But section 34 of the Bank act of 1899, which governs the assessment now under consideration, exempts from taxation all property of the banks, whether real or personal, and hence the reason on which the decision in the Orange bank case rested has ceased to exist.

We find no sufficient ground for disturbing the assessment under review, and consequently it is affirmed, with costs.