(120 App. Div. 838)

PEOPLE ex rel. BRIDGEPORT SAVINGS BANK v. FEITNER et al.

(Supreme Court, Appellate Division, First Department.    July 15, 1907.)

1. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—TAXATION OF PROPERTY.

Tax Law, Laws 1896, p. 805, c. 908, § 23, as amended by Laws 1901, p. 1349, c. 550, provides that the assessment of bank stock shall be made as of June 1st, and requires the chief fiscal officer of every bank, on or before July 1st, to furnish the assessors with a statement of its assets and names of its stockholders.   Section 24 (page 806), as amended by Laws 1901, p. 1350, c. 550, provides that complaints in relation to assessments of bank stock shall be heard and determined as provided in Tax Law, p. 810, art. 2, § 36.   Section 36 (page 810) relates to assessments appearing on assessment rolls completed on or before August 1st, and provides that the assessors shall meet for the purpose of hearing complaints at the time and place specified in the notice required by section 35.   Section 35 provides that notice shall be given for the third Tuesday in August, but that in any city the notice shall conform to the requirements of law regulating the time, place, and manner of revising assessments in such city. Greater New York Charter, Laws 1901, p. 386, c. 466, § 906, provides that a certiorari to review or correct any final determination of the board of taxes shall be allowed by the Supreme Court on the petition of the party aggrieved.   Held, that the omission to provide for a hearing of the stockholders of banks located in the city of New York did not render Tax Law, §§ 23, 24, as amended by Laws 1901, pp. 1349, 1350, c. 550, unconstitutional, as being in violation of Const. N. Y. art. 1, § 6, and Const. U. S. Amend. 14, declaring that no person shall be deprived of property without due process of law, and that the opportunity to contest the validity of a tax provided for by section 906 was sufficient.

2. TAXATION—NATIONAL BANKS—STOCK.

Rev. St. U. S. § 5219 [U. S. Comp. St. 1901, p. 3502], declares that shares of national banks may be taxed by state authority, subject to the restriction that the taxation shall not be at a greater rate than is assessed on other moneyed capital in the hands of any individual citizens of such state.   Tax Law, Laws 1896, p. 804, c. 908, § 21, subd. 4, authorizes the deduction of the just debts of a person or corporation assessed in determining the amount of his assessment for taxation.   Section 24 (page 806), as amended by Laws 1901, p. 1349, c. 550, provides that the rate of tax on bank stock shall be 1 per cent. on the value thereof, ascertained as therein provided, and that the owners of bank stock shall be entitled to no deduction from the taxable value thereof because of their personal indebtedness.   Held, that section 24 did not constitute a discrimination against national bank stock, within section 5219.

Ingraham and McLaughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Certiorari by the people, on the relation of the Bridgeport Savings Bank, against Thomas L. Feitner and others, as commissioners of taxes and assessments of the city of New York, to review the determination of defendants in assessing for taxation relator's shares of stock in ten national banks and one state bank.   From an order dismissing the writ, relator appeals.   Affirmed, on opinion of the court below.

The following is the opinion of McCall, J., in the court below:

This proceeding is brought under section 906 of the Greater New York Charter (Laws 1901, p. 386, c. 466) to review the determination of the respondents in assessing for taxation for the year 1901 certain shares of stock owned by relator in ten national banks and in one state bank.   The legality of such assessment is challenged upon the ground (1) that chapter 500, p. 1349, of the Laws of 1901, in pursuance of which it was made, violates article 1, § 6, of the Constitution of the state of New York and the fourteenth amendment

of the Constitution of the United States, in that it deprives relator of its property by assessment and taxation without giving it an opportunity to be heard and without due process of law, and is therefore void, and upon the further ground (2) that the assessment of its shares in national banks is voidable, because made without allowing any deduction on account of relator's debts, as in the case of other moneyed capital in the hands of individual citizens of this state, and that it is therefore contrary to section 5219 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3502].

The facts in this matter are undisputed, as the parties have stipulated that relator is a Connecticut savings bank and owned shares of stock in national banks and in a state bank on June 1, 1901.; that upon that date it had assets and liabilities of such a character and amount that it would have been exempt from taxation in New York if permitted to deduct its debts, as in the case of an individual taxpayer other than a bank stockholder. The relator was assessed pursuant to sections 23 and 24 of the tax law (Laws 1896, pp. 805, 806, c. 908), as amended by chapter 550, pp. 1349, 1350, of the Laws of 1901. Those provisions are as follows:

"Sec. 23. The chief fiscal officer of every bank or banking association organized under the authority of this state or the United States, shall, on or before the first day of July in each year, furnish the assessors of the tax district in which its principal office is located a statement of the condition of such bank or banking association on the first day of June next preceding, stating the amount of its authorized capital stock, the number of shares and the par value of the shares thereof, the amount of stock paid in, the amount of its surplus, and of its undivided profits, if any, a complete list of the names and residences of its stockholders and the number of shares held by each. In case of neglect or refusal on the part of any bank or banking association to report as herein prescribed, or to make other or further reports as may be required, such bank or banking association shall forfeit the sum of one hundred dollars for each failure, and the additional sum of ten dollars for each day such failure continues, and an action therefor shall be prosecuted by the county-treasurer of the county in which such bank or banking association so neglecting or refusing to report is located, and in the city of New York by the receiver of taxes thereof. There shall, in addition to such report, be kept in the office of every such bank or banking association a full and correct list of the names and residences of all stockholders therein, and of the number of shares held by each, and such lists shall be subject to the inspection of the assessors at all times. The list of stockholders furnished by such bank or banking association shall be deemed to contain the names of the owners of such shares as are set opposite them, respectively, for the purpose of assessment and taxation.

"Sec. 24. In assessing the shares of stock of banks or banking associations, organized under the authority of this state or the United States, the assessment and taxation shall not be at a greater rate than is made or assessed upon other moneyed capital in the hands of individual citizens of this state. The value of each share of stock of each bank and banking association shall be ascertained and fixed by adding together the amount of the capital stock, surplus and undivided profits of such bank or banking association, and by dividing the result by the number of outstanding shares of such bank or banking association. The rate of tax upon the shares of stock of banks and banking associations shall be one per centum upon the value thereof, as ascertained and fixed in the manner hereinbefore provided, and the owners of the stock of banks and banking associations shall be entitled to no deduction from the taxable value of their shares because of the personal indebtedness of such owners, or for any other reasons whatsoever. Complaints in relation to the assessments of the shares of stock of banks and banking associations made under the provisions of this act shall be heard and determined as provided in article 2, section 36, of the tax law. * * *"

As required by section 23, the chief fiscal officers of the banks whose shares are owned by relator reported to respondents their respective conditions. The relator gave notice on June 1st that it claimed to be exempt from assessment on account of its debts, but was refused a hearing. The stocks were assessed prior to October 30, 1901, and notice given the respective banks on October 31,

1901, whereupon relator sued out the writ herein. The tax rate for 1901 in the borough of Manhattan, city of New York, where all the banks are located, was 2.31783 per cent., while the rate fixed by section 24, supra, for bank stocks is 1 per cent. upon their value as determined by said section. The omission to provide by statute for a hearing of the individual owners of stocks in banks before determining the value of the shares for purposes of taxation is claimed by relator to deprive it of its property without due process of law, and to be contrary to the Constitutions both of this State and of the United States. The only provision for the hearing of complaints of individual shareholders is contained in section 24, supra, which says: "Complaint in relation to the assessments of the shares of stock of banks and banking associations, made under the provisions of this act, shall be heard and determined as provided in article 2, section 36, of the tax law." Section 36 relates to assessment rolls completed on or before August 1st in each year. Thus the time for hearing complaints, as provided for by sections 24 and 36, expires before the first step is taken to assess bank stocks as provided by section 24, and relator is thus deprived of an individual hearing.

What is "due process of law" is a matter that is always determined by courts upon the facts of each case. As said in Glidden v. Harrington, 189 U. S. 255, 23 Sup. Ct. 574, 47 L. Ed. 798: "Such notices shall be given as are suitable in a given case, and it is only where the proceedings are arbitrary, oppressive, or unjust that they are declared to be not due process of law." Again, in the case of Turpin v. Lemon, 187 U. S. 51, 23 Sup. Ct. 20, 47 L. Ed. 70, the Supreme Court said: "Exactly what due process of law requires in the assessment and collection of general taxes has never yet been decided by this court, although we have had frequent occasion to hold that, in proceedings for the condemnation of land under the laws of eminent domain or for the imposition of special taxes for local improvements, notice to the owner at some stage of the proceedings, as well as an opportunity to defend, is essential [citing cases]. But laws for the assessment and collection of general taxes stand upon a somewhat different footing, and are construed with the utmost liberality, sometimes even to the extent of holding that no notice whatever is necessary." In the case at bar relator has an opportunity to contest the validity of the tax in this proceeding, when it becomes practically de novo hearing, and obtain for itself due and legal disposition of its objections to the tax imposed. In Hagar v. Reclamation District, 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569, the Supreme Court again stated: "In some states, instead of a board of revision or equalization, the assessment may be revised by proceedings in the courts, and be then corrected if erroneous, or set aside if invalid, or objections to the validity or amount of the assessment may be taken when the attempt is made to enforce it. In such cases all the opportunity is given to the taxpayer to be heard respecting the assessment which can be deemed essential to render the proceedings due process of law."

There is nothing arbitrary, oppressive, or unjust in the proceedings herein. The act defines the manner of arriving at the value of the shares of stock in banks. It requires a statement from some person who shall be the chief fiscal officer of the bank. Manifestly any information that a shareholder would furnish on an individual application would be nothing but hearsay, as compared with the proof given by the officer who is charged with a knowledge of its finances and from whom the stockholder must necessarily get the information he would vouchsafe. There is no deduction allowed for the individual debts of shareholders, and consequently, unless it is found that such a provision is invalid, then no hearing of the individual shareholders was necessary, other than the remedy which this proceeding gives, and there is no violation of relator's constitutional rights.

This brings us to the second objection of relator to this assessment. Section 5219 of the United States Revised Statutes declares: "Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares in assessing taxes imposed by authority of the state within which the association is located; but the Legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions that the taxation shall not

be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by nonresidents of any state shall be taxed in the city or town where the bank is located, and not elsewhere." That section of the United States Revised Statutes is the measure of the power of any state to tax, as it is conceded that without it no state has any power to tax the shares of national banking associations. Owensboro Nat. Bank v. Owensboro, 173 U. S. 664, 19 Sup. Ct. 537, 43 L. Ed. 850. So that any tax levied pursuant thereto is subject to the restrictions contained therein. Under the tax law of the state of New York (section 21, subd. 4) persons and corporations have the right to deduct their debts from personal property subject to taxation for town, county, or municipal purposes. People ex rel. Cornell Steamboat Co. v. Dederick, as Assessor, 161 N. Y. 195, 55 N. E. 927. By comparing section 21 with section 24 it appears that owners of personal property generally throughout this state are taxed for their personal property, less any debts they may owe which were not incurred in the purchase of nontaxable property, at the same rate as all other property within the tax district where the owner resides, while as to bank shares the rate is 1 per cent. upon their value, without any right to a deduction for debts of the owner, and the tax is payable in the tax district where the bank is located.

The relator relies principally upon the case of People v. Weaver, 100 U. S. 539, 25 L. Ed. 705, which was decided under chapter 761, p. 1647, of the Laws of 1866, the tax law of this state then in force. The facts are the same as in the case at bar. The debts of the person taxed were not deducted from the amount assessed against him on account of his ownership of bank shares, although it was not disputed that he would have had the right in the event that the assessment was against his personal property other than bank shares. The court said: "It cannot be disputed, it is not disputed here, nor is it denied in the opinion of the state court, that the effect of the state law is to permit a citizen of New York, who has moneyed capital invested otherwise than in banks, to deduct from that capital the sum of all his debts, leaving the remainder alone subject to taxation, while he whose money is invested in shares of bank stocks can make no such deduction. Nor, inasmuch as nearly all the banks in that state and in all others are national banks, can it be denied that the owner of such shares who owes debts is subjected to a heavier tax on account of those shares than the owner of moneyed capital otherwise invested, who also is in debt, because the latter can diminish the amount of his tax by the amount of his indebtedness, while the former cannot. That this works a discrimination against the national bank shares as subjects of taxation, unfavorable to the owners of such shares, is also free from doubt." The court held that the word "rate" in section 5219 did not mean the tax rate alone, but that the assessment, the rate of assessment, and the valuation must all be taken together when considering the question of whether the act of the commissioners in the method of enforcing the tax worked a discrimination. Were that decision the only one upon this question, it would be conclusive upon me in this proceeding; but the question did not seem to be settled by it, and, though it was apparently followed by that court in several later cases, viz.: Supervisors v. Stanley, 105 U. S. 305, 26 L. Ed. 1044; Hills v Exchange Bank, 105 U. S. 319, 26 L. Ed. 1052; Evansville Bank v. Britton, 105 U. S. 322, 26 L. Ed. 1053; and Cummings v. Nat. Bank, 101 U. S. 153, 25 L. Ed. 903—yet in one of those cases (Evansville Bank v. Britton, supra), there appears in the opinion an expression that "moneyed capital," as used in the act of Congress; does not mean the same as personal property, and saying: "Undoubtedly there may be much personal property exempt from taxation without giving bank shares a right to similar exemption, because personal property is not necessarily moneyed capital." Those decisions were all rendered while the act of 1866 was in force.

In 1882 chapter 409, the tax law of this state, was amended, and the question of what the purpose of the act of Congress was in limiting the state's power to tax national bank shares came before the court in 1886, in the case of Mercantile Bank v. New York, 121 U. S. 138, 7 Sup. Ct. 826, 30 L. Ed. 895, where the Supreme Court stated that: "The key to the proper interpretation of the act of Congress is its policy and purpose. The object of the law was

to establish a system of national banking institutions, in order to provide a uniform and secure currency for the people and to facilitate the operations of the treasury of the United States. The capital of each of the banks in this system was to be furnished entirely by private individuals; but for the protection of the government and the people it was required that this capital, so far as it was the security for its circulating notes, should be invested in the bonds of the United States. These bonds were not a subject of taxation; and neither the banks themselves nor their capital, however . invested, nor the share of stock therein held by individuals, could be taxed by the states in which they were located, without the consent of Congress, being exempted from the powers of the state in this respect because these banks were means and agencies established by Congress in execution of the powers of the government of the United States. It was deemed consistent, however, with these national uses, and otherwise expedient, to grant to the state the authority to tax them within the limits of a rule prescribed by the law. In fixing those limits it became necessary to prohibit the states from imposing such a burden as would prevent the capital of individuals from freely seeking investment in institutions which it was the express object of the law to establish and promote. The business of banking, including all the operations which distinguish it, might be carried on under state laws, either by corporations or private persons, and capital in the form of money might be invested and employed by individual citizens in many single and separate operations, forming substantial parts of the business of banking. A tax upon the money of individuals, invested in the form of shares of stock in national banks, would diminish their value as an investment and drive the capital so invested from this employment, if at the same time similar investments and similar employments under the authority of state laws were exempt from an equal ·burden. The main purpose of Congress, therefore, in fixing limits to state taxation on investments in the shares of national banks, was to render it impossible for the state, in levying such a tax, to create and foster an unequal and unfriendly competition by favoring institutions or individuals carrying on a similar business and operations and investments of a like character." And it then seemed to the court necessary to ascertain what the words "other moneyed capital in the hands of individuals," as used in the statute, meant, and this was defined in the same case, and followed later in other cases, as follows: "Of course, it includes shares in national banks. The use of the word 'other' requires that. If bank shares were not 'moneyed capital,' the word 'other' in this connection would be without significance. But 'moneyed capital' does not mean all capital, the value of which is measured in terms of money. In this sense, all kinds of real and personal property would be embraced by it; for they all have an estimated value as the subjects of sale. Neither does it necessarily include all forms of investment in which the interest of the owner is expressed in money. Shares of stock in railroad companies, mining companies, manufacturing companies, and other corporations are represented by certificates showing that the owner is entitled to an interest, expressed in money value, in the entire capital and value of the corporation; but the property of the corporation which constitutes its invested capital may consist mainly of real and personal property,·which, in the hands of individuals, ·no one would think of calling 'moneyed capital,' and its business may not consist in any kind of dealing in money, or commercial representatives of money. So far as the policy of the government in reference to national banks is concerned, it is indifferent how the states may choose to tax such corporations as those just mentioned, or the interests of individuals in them, or whether they should be taxed at all. Whether property interests in railroads, in manufacturing enterprises, in mining investments, and others of that description, are taxed or exempt from taxation, in the contemplation of the law, would have no effect upon the success of national banks. There is no reason to suppose, therefore, that Congress intended in respect to these matters to interfere with the power and policy of the states. The business of banking, as defined by law and custom, consists in the issue of notes payable on demand, intended to circulate as money where the banks are banks of issue; in receiving deposits payable on demand; in discounting commercial paper; making loans of money on collateral security; buying and selling bills of ex-

change, negotiating loans, and dealing in negotiable securities issued by the government, state and national, and municipal and other corporations. These are the operations in which the capital invested in national banks is employed, and it is the nature of that employment which constitutes it in the eye of this statute 'moneyed capital.' Corporations and individuals carrying on these operations do come into competition with the business of national banks, and capital in the hands of individuals thus employed is what is intended to be described by the act of Congress."

This case is approved and followed in Aberdeen Bank v. Chehalis Co., 166 U. S. 440, 17 Sup. Ct. 629, 41 L. Ed. 1069; Nat. Bank of Wellington v. Chapman, 173 U. S. 205, 19 Sup. Ct. 407, 43 L. Ed. 669; Commercial Bank v. Chambers, 182 U. S. 556, 21 Sup. Ct. 863, 45 L. Ed. 1227. The Chambers Case was one arising under the laws of Utah, and it approved the distinction heretofore pointed out between "moneyed capital" and capital which does not come into competition with the business of national banks. It also approved of the decision of the courts of Utah in refusing to deduct the value of real estate owned by the bank outside the state, though individual nonresident owners would not be taxed for such real estate. The Chapman Case was one arising under the laws of Ohio, and again the distinction between "moneyed capital" and capital not coming into competition with national banks was approved. The court there pointed out that the Ohio law was not intended to be unfriendly to or to discriminate against owners of national bank shares, and that exemptions from taxation made for reasons of public policy and not as an unfriendly discrimination against investments in national bank shares could not be regarded as forbidden by the statute.

From the clearly defined purpose of the act of Congress as expressed by the Supreme Court in Mercantile Bank v. New York Case, and from the construction of the term "moneyed capital" in the same case, I have arrived at the conclusion that, unless the owner of national bank shares can show that there is some unfriendly discrimination against national bank shares as a whole throughout the state, the tax is right and should be upheld. I can see no reason for finding unfriendly discrimination against national bank shares by the respondents, because in the one instance the individual owner of natioal bank shares may have debts which he could have deducted from his assessment for personal property, but which the law says he cannot deduct from the amount assessed against him for national bank shares. The state has fixed the rate of assessment on bank shares at 1 per cent., while in the city of New York for the year 1901 the rate on property generally was over 2.31 per cent. Couple this with the fact that this rate of assessment was applied, not to the actual salable market value of the shares of said stock, but to the book value, and then applying the key to the proper interpretation of the act of Congress, to wit, its policy and purpose (Mercantile Bank v. New York, supra), it becomes exceedingly difficult to spell out a discrimination forbidden by such act from the mere fact that, in addition to the favor shown both in the rate applied and the valuation taken, there was not the further one given of allowing the deduction of debts.

Writ dismissed, with costs.

C. F. Brown, for appellant.
G. S. Coleman, for respondents.

PER CURIAM. Order affirmed, with costs, on the opinion of the court below.

INGRAHAM and McLAUGHLIN, JJ., dissent.